663 A.2d 725

**In re Petition of Ronald KOENIG.**

**Appeal of Ronald KOENIG.**

Superior Court of Pennsylvania.

Argued June 29, 1995.

Filed Aug. 8, 1995.

Michael S. Goodwin, New Britain, for appellant.

Theodore Fritch, Jr., Asst. Dist. Atty., Doylestown, for the Com., participating party.

Before ROWLEY, President Judge, and HUDOCK and CERCONE, JJ.

HUDOCK, Judge:

Ronald Koenig (Appellant) appeals from the order of the trial court denying his petition for return of property pursuant to Rule 324 of the Pennsylvania Rules of Criminal Procedure, 42 Pa.C.S.A. We reverse.

The trial court summarized the facts underlying the present dispute as follows:

> On April 24, 1994, the New Britain Township police went to the residence of [Appellant] in response to a call from his wife, Sharon Koenig. Mrs. Koenig testified that [Appellant] was intoxicated and threatened to kill her and their son. She stated that [Appellant] threatened "to blow us away". This altercation occurred in the kitchen of the house.
>
> The police responded with a commitment pursuant to the Mental Health Procedures Act, 50 P.S. § 7302 and found [Appellant] in his bedroom. In the bedroom was a rifle on a tripod, a handgun on a night table and an AK–47 in a box under the bed. Another firearm was found in an adjacent office.

Trial Court Opinion, 3/15/95, at p. 1.[1] Mrs. Koenig testified that the argument occurred at 4:30 a.m., she then left the residence and, at approximately 10:00 a.m., called the police to

---

1. On cross-examination a police officer conceded that the rifle was not positioned atop the tripod, but rather was leaning against a wall next to it. We also note that, at the time the threat was made, Appellant did not have any gun in his hand and Appellant's son was not present.

check on her husband. Mrs. Koenig claimed that she placed the call because she was afraid Appellant might kill himself. She also testified that she felt safe at the time she called the police and was only concerned with Appellant's welfare. The trial court declined to accept this testimony, concluding that Mrs. Koenig was attempting to "sugar coat" her testimony because she had now reconciled with Appellant. N.T., 1/19/95, at p. 11. Indeed, the trial court stated its belief that Mrs. Koenig was terrified for her own safety when she made the call to police.

The guns discovered by the police, as well as ammunition and a hunting knife, were seized as derivative contraband. Appellant voluntarily entered an alcohol rehabilitation program and no criminal proceedings were instituted. Thereafter Appellant filed a petition seeking the return of his property. This petition, as well as a petition to reconsider, were denied by the trial court. This appeal followed.

▆▆▆▆ The sole issue raised on appeal is whether the trial court abused its discretion in denying Appellant the return of his property. With regard to the return of property seized by police, this Court has stated:

On a motion for return of property, the moving party has the burden of proving ownership or lawful possession of the items. *Commonwealth v. Pomerantz*, 393 Pa.Super. 186, 573 A.2d 1149 (1989). The burden then shifts to the Commonwealth to prove, by a preponderance of the evidence, that the property is contraband. *Id.* Rule 324 was interpreted at length by this court in *Petition of Maglisco*, 341 Pa.Super. 525, 491 A.2d 1381 (1985). *Maglisco* reaffirmed the principle that where criminal charges have been dismissed, seized property may be retained by the Commonwealth only if it comprises contraband *per se* or derivative contraband.

Contraband *per se* is property whose possession is unlawful; derivative contraband is property which is innocent in itself but which has been used in the perpetration of an unlawful act. *One 1958 Plymouth Sedan v. Commonwealth*

*of Pennsylvania,* [380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170] (1965); *Commonwealth v. Fassnacht,* 246 Pa.Super. 42, 369 A.2d 800 (1977), *cert. denied,* [439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 257]. Property is not derivative contraband, however, merely because it is owned or used by someone who has been engaged in criminal conduct. *Commonwealth v. One 1985 Dark Blue Mercedes,* 391 Pa.Super. 507, 571 A.2d 482 (1990), *alloc. denied* 526 Pa. 654, 586 A.2d 922 (1990). Rather, the Commonwealth must establish a specific nexus between the property and the alleged criminal activity. *Id.; Petition of Maglisco, supra,* at 525, 491 A.2d 1381 (although actual gun used in crime is derivative contraband, rifles not used in commission of crime must be returned).

*Commonwealth v. Stipetich,* 424 Pa.Super. 539, 544–45, 623 A.2d 360, 362 (1993). There is no real dispute as to whether Appellant lawfully possessed the items which were seized. Thus, the issue becomes whether the Commonwealth could prove, by a preponderance of the evidence, that these items were derivative contraband.

In *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985), wife shot her husband in the leg with a .38 caliber pistol. Upon responding to the residence, the police seized the pistol. A few hours later, the police returned and confiscated several rifles in wife's possession. Charges against wife were later dropped. Following a hearing, both the pistol and the rifles were forfeited. On appeal to this Court, the forfeiture of the pistol was upheld while the forfeiture of the rifles was reversed. In so doing, this Court stated:

In the instant case, the pistol was uncontrovertibly fired by appellant Maglisco with a bullet lodging in the leg of her husband. We do not hesitate to conclude that, by a preponderance of the evidence, a crime was committed with the pistol and it is, therefore, derivative contraband.

This conclusion cannot be reached with regard to the rifles. There was no evidence presented at the forfeiture hearing that the rifles had been used in the commission of any crime. Nor has extensive research disclosed a single case where the "guilt" of one object of derivative contraband

was held to attach by association to other similar, but non-culpable objects owned by the same person. Such a theory has certain common-sense validity, which is well-illustrated by this very case. The court below was, by its own statements, seeking to avoid the recurrence of another firearm incident through the removal of the rifles from appellant Maglisco's possession. But, if derivative contraband is defined only as those objects used in the commission of a crime, then the rifles cannot be so labelled, and, thus, cannot be forfeited.

*Id.* 341 Pa.Super. 531, 491 A.2d at 1384. *See also Commonwealth v. One 1985 Dark Blue Mercedes,* 391 Pa.Super. 507, 513–15, 571 A.2d 482, 485 (1990), *alloc. den.,* 526 Pa. 654, 586 A.2d 922 ("Objects do not acquire 'guilt by association' merely because they are owned by a person who has been engaged in criminal conduct.... The requirement that a sufficient nexus exist between the property and the prohibited criminal activity serves to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person.").

In the present case, the trial court found *Maglisco* distinguishable. It then reasoned as follows:

Here, [Appellant] made a threat to his wife and son that he would "blow them away". The use of this phrase obviously implies that a firearm would be used. [Appellant's] substantial arsenal, located in the house in which the threats were made, was certainly apparent to his wife and son at the time of his threat. [Appellant's] threat to kill could have been easily carried out by using the handgun, the rifle, or the AK–47. The fact that [Appellant] had an ample choice of firearms and easy access to them must have made his wife's fears all the more plausible and terrifying.

There is a substantial nexus between the imposing firearm collection of [Appellant], as a group and individually, to the terroristic threats made to his wife and son. *See Comm. v. One 1985 Dark Blue Mercedes,* 391 Pa.Super. 507, 571 A.2d 482 (1990). Therefore, each firearm in [Appel-

lant's] house was used in the commission of the unlawful act, the threats to his family.

Considering the threat to kill and "blow" away his family, and the easy access to firearms, it is appropriate that each firearm be deemed derivative contraband used in the commission of an unlawful act and properly forfeited.

Trial Court Opinion, 3/15/95, at pp. 2–3. We find the trial court's reasoning unpersuasive.

It is undisputed that when Appellant threatened his wife and son he was in the kitchen of the home and had no gun or other weapon in his hand. Thus, it cannot be said that any of these guns were used in the perpetration of the crime. As noted in *Maglisco,* and reaffirmed in *One 1985 Dark Blue Mercedes,* guilt by association is not enough. In the present case, the fact that any of these guns could have been used to carry out the threat does not render them derivative contraband subject to forfeiture. *See also Estate of Peetros v. County Detectives and District Attorney's Office,* 341 Pa.Super. 558, 560–62, 492 A.2d 6, 8 (1985) ("It is the status of the property when it was seized and the uses to which it had been put at the time which are determinative, not whether the property will be used for only lawful purposes in the future. To hold otherwise would be inconsistent with the entire concept of derivative contraband."). It appears the trial court believed that Appellant's "arsenal" posed a continued threat to Mrs. Koenig. This may be, but as stated by the *Maglisco* court, an item cannot be labelled derivative contraband merely to avoid the recurrence of criminal conduct.

Order reversed. The matter is remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.