713 A.2d 89

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Miles Mark HOWARD, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Feb. 5, 1998.

Decided June 18, 1998.

William F. Ochs, Jr., Reading, for Miles Mark Howard, Jr.

Mark C. Baldwin, Dist. Atty., Iva C. Dougherty, Asst. Dist. Atty., Ellen R. West, Reading, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal from an order of the Superior Court which affirmed the trial court's denial of appellant's motion for return of property. Appellant had petitioned for the return of one hundred sixty-one handguns, a small quantity of ammunition, and a caliber conversion kit for a .45 caliber pistol, all of which had been seized following his arrest for various firearms violations.

In 1994 the state police conducted an investigation of illegal sales of firearms at flea markets. During this investigation, appellant sold numerous guns to an undercover state police officer. He was subsequently arrested and pled guilty to twenty-eight counts of violation of 18 Pa.C.S. § 6111 (failure to wait the necessary forty-eight hours between application to purchase and delivery of the firearm). With regard to the sale of additional guns, he also pled guilty to eight additional counts of the violation of 18 Pa.C.S. § 6111. Finally, appellant pled guilty to 18 Pa.C.S. § 908, Prohibited Offensive Weapons, 18 Pa.C.S. § 6106, Firearms not to be carried without a license, and 18 Pa.C.S. § 6111, Sale of Firearms, in connection with his sale to the undercover officer of three machine guns and nine pistols. Appellant was sentenced to multiple concurrent sentences of six to twenty-three months imprisonment, a collective fine of $45,000, and ten years probation. Post-trial motions to modify the sentences were filed and denied and the Superior Court affirmed the trial court on the sentencing issues. The convictions and sentences are not at issue in this appeal. This appeal concerns only the propriety of the denial of the petition for the return of property.[1]

1. The facts of the case are well-summarized in the trial court's Memorandum Opinion of October 17, 1995 in support of its judgment of sentence:

> The charges for which defendant was convicted rise from a series of sales made from June 22, 1994 and October 12, 1994 between the defendant and Trooper Richard Diskin of the Pennsylvania State Police, Bureau of Criminal Investigation. Trooper Diskin first heard of the defendant on June 18, 1994 and first made contact with the defendant on June 22, 1994 .... during this first meeting, defendant sold the Trooper a Hopkins & Allen .38 caliber revolver from a flea market stand in front of his van at the Leesport Farmer's market/Flea market, Leesport, Berks County, for $165. The transaction was on a cash basis only and at no time did the defendant involve any paperwork, taxes, receipts, or identification. The only mention of such legal requirements came during vulgar denouncement directed at the government and the Brady bill, and lamentations that John Hinkley was not a better shot.
>
> Over the next few months, the defendant and Trooper Diskin continued their transactions on seven more occasions. On July 6, Trooper Diskin purchased from defendant a H & R .22 caliber revolver for $200.... On July 15, the Trooper conducted a check on the defendant and discovered that the defendant was not licensed to sell firearms.... On September 21, defendant sold the Trooper a

After appellant was arrested, he voluntarily disclosed to police the location of the one hundred sixty-one firearms at issue in this case. Police confiscated these firearms from appellant's home and the home of his daughter-in-law. Appellant maintains that these firearms were his private collection and were not being offered for sale or displayed at the flea markets, where other sales had occurred.[2] On September 11,

> Colt .32 caliber revolver for $325, a Walther P–38 caliber [sic] semi-automatic pistol for $375, a Colt Detective Special for $250, and a Taurus .38 caliber revolver for $150.... One week later on September 28, the Trooper bought a Rossi .22 caliber revolver for $250 and a Colt .45 caliber semi-automatic for $500.... On October 5, defendant sold to the Trooper two Savage 9mm semi-automatic pistols, three (3) Savage .32 caliber semi-automatic pistols and a F.I. .380 caliber semi-automatic pistol for a total price of $1700.... All of these transactions occurred at the Leesport Farmers Market/Flea market and there was never any paperwork, taxes, receipts or identification involved.
>
> On October 10, the defendant participated in a gun show as a vendor at the Hamburg Field House, Hamburg, Berks County. On this particular occasion, the defendant informed the Trooper that he wanted to get rid of three machine guns in a package deal and the Trooper said he was interested in the deal. The defendant also brought the Trooper to his van and sold the Trooper four firearms for $950: an American Arms P98 .22 caliber semi-automatic pistol, H & R model 733 .32 caliber revolver, Jennings model J–22 .22 caliber semi-automatic pistol, and Bayard 7.65mm (.32 caliber) semi-automatic pistol with [an] extra clip. Again, the transaction contained no paperwork, taxes, receipts, or identification....
>
> The final transaction between the defendant and the Trooper occurred on October 12. This arrangement included the previously mentioned machine guns, as well as eight pistols and an H & R .32 caliber semi-automatic pistol. The defendant and the Trooper arranged to meet in the parking lot of Hess's Diner, rt. 61 and 73, Leesport at 7:00 a.m. and conduct the purchase. The two met at that time and the Trooper purchased the twelve firearms for $9,300. Following this sale, the defendant was arrested....
>
> During the course of his investigation, the Trooper learned that the defendant would travel to Florida to conduct business in firearms. The defendant had a Florida phone number listed on his business card.... The defendant also revealed that he conducted business in New York, including sales of hand guns to a Long Island Detective to unload in New York.
>
> Memorandum Slip Op. at 3–4. (References to the transcript and the presentence investigation report are omitted.)

2. Although the police originally seized long barreled guns as well as handguns, the subject of the underlying petition for return of property, with three exceptions, is handguns. Appellant testified that when

1995, appellant filed a petition for return of property. He is not requesting that the guns be returned to his possession, since possession of firearms would be a violation of his sentence. Instead, he requests that the firearms be delivered to an authorized dealer who would liquidate them and pay him the proceeds. On April 10, 1996, the trial court denied his petition. On April 16, 1997, the Superior Court affirmed the trial court's denial of the petition for return of property, and on September 30, 1997 we granted appellant's petition for allowance of appeal.

The trial court's rationale was that appellant possessed the guns in his collection "for the purposes of engaging in unlawful sales of firearms." The court noted that appellant's illegal sales of firearms were extensive and were spread into New York and Florida.

The Superior Court determined that the appellant admitted that he sold guns "... out of my personal, private collection...." N.T. 2–1–96 at 35. Since the personal collection was utilized, in the Superior Court's view, for illegal sales, the personal collection was derivative contraband and was, therefore, subject to forfeiture. Judge, now Mr. Justice Saylor dissented on the grounds that the Commonwealth, which presented no evidence at the hearing, did not meet its burden of proving a specific nexus between the items seized and criminal activity.[3]

Appellant's petition for return of property was brought pursuant to Pa.R.Crim.P. 324, which provides:

(a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof....

police confiscated his van, the van contained approximately ninety long guns. Police subsequently returned these guns to appellant, who sold them at auction. N.T. 6–5–96, p. 12.

**3.** The Commonwealth's view is that because the appellant adopted the presentence investigation report, which contains a narration of the manner in which the guns were sold, the presentence investigation report is part of the record and is sufficient to support the Commonwealth's case for forfeiture.

(b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

The Superior Court has held that the moving party on a motion for return of property has the burden of proving ownership or lawful possession of the item, and the burden then shifts to the Commonwealth to prove, by a preponderance, that the property is contraband. *Petition of Koenig,* 444 Pa.Super. 163, 663 A.2d 725, 726 (1995). Contraband has been defined as follows:

> [T]wo distinct classifications of contraband have been developed: contraband *per se,* and derivative contraband. Contraband *per se* is property the mere possession of which is unlawful. . . . Heroin and 'moonshine' whiskey are examples of contraband *per se.* Derivative contraband is property innocent by itself, but used in the perpetration of an unlawful act. An example of derivative contraband is a truck used to transport illicit goods.

*Commonwealth v. Fassnacht,* 246 Pa.Super. 42, 369 A.2d 800, 802 (1977.) (Citations omitted.)

Appellant's position in this appeal is that the Commonwealth has not established by a preponderance of evidence that the handguns at issue are contraband subject to forfeiture.

The Commonwealth acknowledges that appellant lawfully owned and possessed the handguns at issue, and therefore, that they are not contraband *per se,* but it asserts that the firearms are derivative contraband because appellant used them "as the owner of a store uses his stock on display. All the Defendant's firearms were for sale. The Defendant told [the undercover officer] that he could purchase any of these firearms. . . ." Brief at 10. The Commonwealth cites appellant's testimony that for the three convictions underlying his petition, he had sold guns out of his personal, private collection. N.T. 2–1–96 at 35, 37. The Commonwealth concludes

from this that the firearms at issue are derivative contraband because they have been used in the perpetration of an unlawful act. *Fassnacht,* supra.

In *Petition of Koenig,* the Superior Court stated:

Property is not derivative contraband ... merely because it is owned or used by someone who has been engaged in criminal conduct.... Rather, the Commonwealth must establish a specific nexus between the property and the alleged criminal activity....

In *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985), wife shot her husband in the leg with a .38 caliber pistol. Upon responding to the residence, the police seized the pistol. A few hours later, the police returned and confiscated several rifles in wife's possession. Charges against wife were later dropped. Following a hearing, both the pistol and the rifles were forfeited. On appeal to this Court, the forfeiture of the pistol was upheld while the forfeiture of the rifles was reversed.

444 Pa.Super. 163, 663 A.2d 725, 726–27 (1995). The court went on to observe:

Objects do not acquire 'guilt by association' merely because they are owned by a person who has been engaged in criminal conduct.... The requirement that a sufficient nexus exist between the property and the prohibited criminal activity serves to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person.

Id. at 727, citing *Commonwealth v. One 1985 Dark Blue Mercedes,* 391 Pa.Super. 507, 571 A.2d 482, 485 (1990).

In our view, the Commonwealth has not established a sufficient nexus in this case between the private collection of handguns and criminal conduct of selling guns to the undercover officer. Assuming that the Superior Court's determination is accurate, that appellant sold guns out of his personal, private collection, Slip Op. at 7–8, all this establishes is that the guns which were illegally sold are derivative contraband

and the remaining guns, not having been sold, are not. The remaining guns do not become contraband merely because their owner engaged in criminal conduct with respect to other guns.

As to the argument that there is a nexus between the guns in the collection and the illegal sales in that the guns in the collection were up for sale, the connection, on this record, is too tenuous. The guns remaining in the private collection were not, in fact, sold, and the police did not even know of their location until after appellant was arrested, when he voluntarily disclosed the location to police. Perhaps if the guns remaining in the collection had been displayed or even specifically described, or if the undercover officer had viewed the collection for the purpose of selecting certain guns to purchase, the case might be different. But here, at most, there is discussion about the possibility of a sale of unspecified remaining guns. That is an insufficient nexus.

 Courts must be vigilant of the temptation to treat cases involving firearms differently from cases involving other alleged contraband. There is no "gun-exception" to the general rule that a nexus must exist between the seized item and criminal conduct.

The order of the Superior Court is reversed. The petition for the return of property is granted.

SAYLOR, J., did not participate in the consideration or decision of this case.

CASTILLE, J., files a dissenting opinion in which CAPPY, J., joins.

CASTILLE, Justice, dissenting.

I respectfully dissent to the majority's conclusion that the firearms seized from appellant's "private" collection did not constitute derivative contraband. Because the Commonwealth established a sufficient nexus between the property at issue and appellant's underlying criminal conduct of unlawfully selling firearms, appellant has no entitlement to the proceeds of

the sale of the confiscated firearms. Accordingly, I would affirm the judgment of the lower courts.

Appellant contends that the firearms stored at his residence and at his daughter-in-law's residence were merely part of his private collection, unavailable for sale and hence unrelated to his underlying criminal activity, and that the Commonwealth failed to sustain its burden of proving otherwise by a preponderance of the evidence. However, the trial court properly determined that at appellant's guilty plea and sentencing hearing, appellant adopted the contents of the presentence investigation report ("PSI") and the affidavit of probable cause attached thereto. After reviewing the PSI, appellant stated that only one mistake relating to his educational level existed on the PSI. In the affidavit of probable cause which led to appellant's arrest, Trooper Diskin stated:

> "By [appellant's] own admission, he indicates that he has guns stored at his place and a much larger amount at his daughter-in-laws [sic] residence. He has asked me on more then [sic] one occasion what type I was interested in and indicated that he had what I was looking for along with other types that I might be interested in" (PSI at 40).

This undisputed statement alone is sufficient to support the finding of the lower courts that the Commonwealth established a nexus between appellant's underlying criminal activity and the firearms which appellant now seeks to shield under the guise that the firearms constituted his private collection. Since appellant plainly admits in this statement that he could obtain whatever type of firearm Trooper Diskin was interested in from the guns that he had stored at his residence and at his daughter-in-law's residence, appellant's transparent attempt to cast what is truly his "inventory" as a "private collection" fails.

The conclusion that the firearms stowed at the two locations were actually part of appellant's sales inventory is further buttressed by the fact that appellant *admitted* that each of the forty-eight firearms that he sold to Trooper Diskin and which served as the predicate for the three convictions against him came from this same inventory. By presenting evidence that

appellant had violated the sanctity of his "private" collection forty-eight times for a pure profit motive, and had further advertised his willingness to sell from that collection any other firearms which Officer Diskin desired, the Commonwealth established by a preponderance of the evidence that there was actually nothing "private" about this collection. Instead, as the Superior Court correctly held, the firearms from this collection were intended by appellant to be used in illegal sales of firearms and thus were derivative contraband.

The majority attempts to derive support for its conclusion that the firearms at issue were not derivative contraband by asserting the "tenuous" nature of the connection between the unsold guns in the "collection" and appellant's criminal activity. Specifically, the majority points to the fact that these guns were neither sold, displayed, nor specifically described. However, the majority overlooks the significance of the fact that appellant had already told Trooper Diskin that he could get him *any* gun that Diskin was looking for from this collection, and thus that appellant obviously did not feel it necessary to further describe any particular gun with specificity.

I agree with the majority's statement that the Court must be vigilant in guarding against the temptation to create a "gun exception" to the general rule that a nexus must be proven between the seized item and the criminal conduct. However, this case does not threaten to create such an exception—here the evidence establishes the requisite nexus beyond peradventure. Consequently, I would deny the petition for return of property and affirm the Order of the Superior Court.

SAYLOR, J., did not participate in the consideration or decision of this matter.

CAPPY, J., joins this dissenting opinion.