COMMONWEALTH of Pennsylvania, Appellant

v.

ONE 2001 TOYOTA CAMRY
(Joel Sandler).

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 14, 2005.

Decided March 8, 2006.

James W. Staerk, Norristown, for appellant.

Joel Sandler, appellee, pro se.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge SMITH–RIBNER.

The Commonwealth of Pennsylvania appeals from the order of the Court of Common Pleas of Montgomery County that denied the Commonwealth's petition to forfeit a 2001 Toyota Camry (Vehicle) owned by Joel Sandler (Sandler). The Commonwealth contends that the trial court erred in concluding that the Vehicle is not derivative contraband subject to forfeiture, as it was used to commit the crime of solicitation of murder, and that the trial court abused its discretion in concluding that forfeiture would be unreasonable due to the tenuous nexus between the Vehicle and Sandler's criminal activity.

On January 16, 2003, Sandler was convicted of criminal solicitation to commit murder and criminal use of communication facility, see Sections 902 and 7512 of the Crimes Code, 18 Pa. C.S. §§ 902 and 7512, respectively, after his attempt to hire a hit man to kill his wife. He was sentenced to an aggregate term of eight and one-half to twenty-five years. On April 29, 2003, the Commonwealth filed a petition to forfeit Sandler's Vehicle seized on April 26, 2001 following his arrest; the Commonwealth alleged that the Vehicle was used in the perpetration of criminal solicitation to commit murder and therefore was derivative contraband subject to forfeiture under Pa. R.Crim. P. 588 (Rule 588) and under common law. In his answer and new matter, Sandler requested the trial court to postpone acting on the petition pending his appeal from the underlying convictions, which were ultimately affirmed. Sandler thereafter filed a *pro se* amended answer alleging that the Commonwealth was not authorized to seize the Vehicle along with his other personal items and that the Vehicle was not derivative contraband. The trial court denied the petition on January 24, 2005 after a hearing at which the court

heard from Detective Eric Echevarri (Echevarri) and from Sandler. The trial court later vacated its findings of fact and conclusions of law but reissued its findings and conclusions on March 17, 2005 as addendum two to its original decision.

The trial court made the following relevant findings and conclusions. In early 2001 Sandler desired to have his wife killed. In March 2001 Echevarria, posing as a contract killer for hire, called Sandler at his home to arrange a meeting. On March 28 Sandler drove the Vehicle to meet Echevarria at a restaurant, but negotiations took place in the Vehicle at Echevarria's suggestion. In April 2001 the detective made many calls to Sandler's residence, and on April 26 they met again at the restaurant. Sandler expressed his suspicion that Echevarria might be a police officer and stated "Let's hold off." It appearing that further contact would be unproductive, the detective arrested Sandler and charged him with solicitation to commit murder and six counts of criminal use of a communication facility.

 The trial court additionally found that the Vehicle was not a necessary component of Sandler's criminality, that he could have committed the crimes without using a vehicle, that the Vehicle was only marginally involved in his overall criminal activity, that it was not admitted into evidence at the criminal trial, that its use did not cause actual harm or injury to any person or property and that a forfeiture would be unreasonable. The trial court concluded that no statutory authority existed for forfeiture of the Vehicle, that common law forfeiture is not favored in the law, that the Commonwealth failed to establish a sufficient nexus between the Vehicle and Sandler's underlying crimes so as to render the Vehicle derivative contraband and that even if it were considered derivative contraband forfeiture would be not be reasonable. The trial court entered its order denying the petition and directing that the Vehicle be returned to Sandler.[1]

 Forfeiture proceedings are deemed civil in form but quasi-criminal in character. *Commonwealth v. 502–504 Gordon Street*, 147 Pa.Cmwlth. 330, 607 A.2d 839 (1992), *aff'd*, 535 Pa. 515, 636 A.2d 626 (1994). In a forfeiture action, the Commonwealth has the burden of establishing by a preponderance of the evidence that a nexus exists between the subject unlawful activity and the property sought to be forfeited. *Commonwealth v. One (1) 1993 Pontiac Trans AM*, 809 A.2d 444 (Pa.Cmwlth.2002). In Pennsylvania forfeiture is basically statutory in nature. *502–504 Gordon Street*. Acknowledging that no statutory authority exists to forfeit Sandler's Vehicle, the Commonwealth argues instead that the Vehicle is derivative contraband subject to forfeiture under common law.[2]

---

1. This Court's review is limited to determining whether the trial court's findings of fact are supported by substantial evidence and whether the trial court committed an abuse of discretion or an error of law. *Commonwealth v. 2136 Clearview Avenue*, 841 A.2d 629 (Pa. Cmwlth.2004). The trial court has the discretion to grant or deny a petition for forfeiture, and this Court will not reverse the trial court's decision absent its abuse of discretion. *In re Return of Property Confiscated*, 856 A.2d 238 (Pa.Cmwlth.2004).

2. The Commonwealth also relied on Rule 588, which provides in relevant part:

(A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

(B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion

■■ Two distinct types of contraband exist: contraband *per se* and derivative contraband. *Commonwealth v. Fassnacht,* 246 Pa.Super. 42, 369 A.2d 800 (1977). Contraband *per se* is property that is inherently illegal and subjects its possessor to criminal sanction, and derivative contraband is property that itself is legal but nonetheless constitutes the fruit of a criminal enterprise or is used to perpetrate an unlawful act. *Commonwealth v. Anthony,* 418 Pa.Super. 82, 613 A.2d 581 (1992). In Pennsylvania, courts did not recognize common law forfeiture of derivative contraband until the 1980s. *See Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985); *Commonwealth v. Coghe,* 294 Pa.Super. 207, 439 A.2d 823 (1982).

In *Commonwealth v. Crosby,* 390 Pa.Super. 140, 568 A.2d 233 (1990), the Superior Court questioned the validity of case precedent recognizing common law forfeiture of derivative contraband but was compelled to follow it, and the court remanded the matter before it to the trial court for further hearing to determine whether the truck that the appellant was driving while under the influence of alcohol should be considered derivative contraband and thus forfeitable under the common law.[3] In *Commonwealth v. Cox,* 161 Pa.Cmwlth. 589, 637 A.2d 757 (1994), the appellant filed a motion for return of the getaway car used during the commission of a robbery. In reversing the trial court's denial of the motion because the Commonwealth never sought to forfeit the car, this Court stated that it was "dubious" whether common law forfeiture exists in Pennsylvania and that even if it did "the extreme caution with which the law regards statutory forfeiture would apply equally, if not more so, to such actions." *Id.* at 759, 760. Later, in *Commonwealth v. One 1990 Dodge Ram Van,* 751 A.2d 1235 (Pa.Cmwlth.2000), the Commonwealth sought the forfeiture of a van owned by the appellant, who was convicted of kidnapping and murder after stabbing the victim in the van and who used it to discard the victim's body. Acknowledging the doubts expressed in *Cox* about common law forfeiture in Pennsylvania, this Court nonetheless relied on *Crosby* to hold that the van was derivative

is granted, the property shall be restored unless the court determines that such property is *contraband,* in which case the court *may* order the property to be forfeited. (Emphasis added.)

In its express terms, Rule 588 applies to a motion for return of property, not a petition to forfeit property filed by the Commonwealth. In *Commonwealth v. Crosby,* 390 Pa.Super. 140, 568 A.2d 233, 238 (1990), the court held that "unless there is some independent authority for a court to order forfeiture, Rule 324 [now Rule 588] should not be interpreted as authorizing the forfeiture because such a forfeiture would affect the substantive rights of the parties to the property being forfeited."

3. The majority in *Crosby* stated:

The limitations, rules, and safeguards established by the legislature when authorizing forfeiture of certain derivative contraband, are essential to the orderly administration of justice, to the protection of constitutional due process concerns, and to the rights of innocent third parties affected by the forfeiture. However, where the common law of forfeiture is applied and there are no such statutory limitations, protections, and procedures, we will not impose a judicially created *automatic* rule of forfeiture in the absence of a careful and thorough consideration of the impact of the forfeiture or the goals to be accomplished by the forfeiture.

. . . .

For these reasons, it would be better to leave to the legislature exclusively the task of determining what derivative contraband is forfeitable, under what circumstances such property may be forfeited, and the procedures to be followed to accomplish forfeiture.

*Crosby,* 568 A.2d at 240–241 (emphasis in original).

contraband subject to common law forfeiture because a specific nexus had been shown to exist between the van and the criminal activity.

Under the cases reviewed, however, property may not be considered derivative contraband "merely because it is owned or used by someone who has been engaged in criminal conduct." *In re Petition of Koenig,* 444 Pa.Super. 163, 663 A.2d 725, 726 (1995). To forfeit property as derivative contraband under the common law, the Commonwealth must establish a specific connection or nexus between the property and the criminal activity. *One 1990 Dodge Ram Van; Koenig.* This requirement "serves to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person." *Commonwealth v. One 1985 Dark Blue Mercedes Benz Car,* 391 Pa.Super. 507, 571 A.2d 482, 485 (1990). *See also Koenig* (holding that guns, ammunition and hunting knife found in a house were not forfeitable as they were not in the kitchen where petitioner threatened his family); *Maglisco* (holding that only the pistol actually fired by wife at her husband was forfeitable and not rifles merely in her possession).

The Commonwealth argues that a direct and specific nexus exists between the Vehicle and the crime of soliciting to commit murder because Sandler drove the Vehicle twice to meet the detective and discussed the murder-for-hire scheme with the detective once in the Vehicle. Relying upon *Commonwealth v. Howard,* 552 Pa. 27, 713 A.2d 89 (1998), in which the Supreme Court noted that *Koenig* listed a truck that was used to transport illicit goods as an example of derivative contraband, the Commonwealth maintains that "[t]ransportation of the criminal to the si-tus of the crime is materially no different than transporting illicit goods." Commonwealth's Brief at p. 11. Any reliance upon *Howard* is misplaced, however, inasmuch as the Supreme Court rejected the Commonwealth's argument that a nexus existed between the guns in the appellant's private collection and his illegal sales of firearms to an undercover officer at flea markets because the guns in the private collection also were up for sale. The Commonwealth contended that the guns in the private collection were derivative contraband since the appellant used them as the owner of any store would use stock on display. The Supreme Court held that the connection was too tenuous where the guns remaining in the private collection were not sold and were disclosed only after his arrest, and it reasoned that the "remaining guns do not become contraband merely because their owner engaged in criminal conduct with respect to other guns." *Id.,* 552 Pa. at 34, 713 A.2d at 93.

In the case *sub judice,* Echevarria testified that Sandler drove the Vehicle to the King of Prussia Plaza parking lot twice to meet him and that he "actually sat in the vehicle at one time." December 14, 2004, N.T. at p. 32. The detective's testimony demonstrated only that the Vehicle was used as a means of transportation and that Sandler had some discussion with the detective in the Vehicle, which the trial court found was at the detective's suggestion. A review of the record shows that the trial court's findings are supported by the record, and the Court thus concludes that the Commonwealth's evidence fails to establish that the Vehicle was used as an instrument of the crime. The evidence does not equate to that presented in *One 1990 Dodge Ram Van* in which the appellant kidnapped the victim, stabbed her in the van that was used and then transported the body in the van to dispose of it. Nor

does the evidence equate to that presented in *Crosby*, where use of a vehicle was an element of the crime of driving under the influence.

As the trial court aptly noted: "Given the pervasiveness of vehicles in our modern society, almost every crime would produce a forfeitable vehicle. Such result does not further the intended purpose of common law forfeiture and would be unreasonable." Trial Court's Opinion, pp. 6–7. Because the Commonwealth's evidence failed to establish a specific connection, or nexus, between the Vehicle and Sandler's criminal activity, the Court agrees that the Vehicle is not derivative contraband subject to common law forfeiture. *Howard; One 1990 Dodge Ram Van; Koenig.*[4] Accordingly, because the trial court committed no error, the Court affirms its denial of the Commonwealth's petition for forfeiture of the Vehicle.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this 8th day of March, 2006, the Court affirms the order of the Court of Common Pleas of Montgomery County in the above-captioned matter.

DISSENTING OPINION BY Judge SIMPSON.

I respectfully dissent. I believe the trial court erred in holding the Commonwealth failed to establish the Vehicle was derivative contraband and there was not a sufficient nexus between it and Sadler's crime.

In support of its forfeiture petition, the Commonwealth presented the testimony of Echevarria and incorporated by reference Sandler's criminal trial transcript. Echevarria testified he met with Sandler on two occasions. During one of the meetings, he sat with Sandler inside the Vehicle[1] and negotiated a price of $25,000 for the hit. Sandler indicated to Echevarria that they "had a deal." (R.R. 366) Therefore, the crime of solicitation to commit murder was complete.

The Commonwealth need not produce evidence directly linking the seized property to illegal activity in order to establish the requisite nexus between the two. *Commonwealth v. $6,425.00 Seized from Esquilin,* 583 Pa. 544, 880 A.2d 523 (2005). Forfeiture has been granted in instances where the requisite nexus was less tenuous than it is here. In *Commonwealth v. Mitchell,* 833 A.2d 1220 (Pa.Cmwlth.2003), the defendant's vehicle was subject to forfeiture when it was used to transport mari-

---

**4.** In *Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street,* 574 Pa. 423, 832 A.2d 396 (2003), the Supreme Court held that the imposition of a punitive forfeiture that is grossly disproportionate to the gravity of the offense constitutes an excessive fine and is therefore unconstitutional. In a forfeiture case, the trial court is the fact finder and has the power to weigh the evidence and to draw any reasonable inferences from the evidence. *Commonwealth v. Schill,* 164 Pa.Cmwlth. 594, 643 A.2d 1143 (1994). Consequently, a determination of whether the amount of the forfeiture sought by the Commonwealth is grossly disproportionate must be made by the trial court, not by the appellate court. *5444 Spruce Street.* In the matter *sub judice,* the trial court made

no findings related to the issue of excessive fines nor even addressed the issue in its opinion.

**1.** The parties originally met inside a restaurant. Sandler had prepared written questions so he did not have to speak. Because Echevarria was wired and there was surveillance of the meeting, Echevarria wanted to talk outside the restaurant. Sandler would not get inside Echevarria's car; therefore, the parties met in Sandler's car. (R.R. 358–363) Although the trial court found Echevarria suggested the meeting take place in the Vehicle, Echevarria testified at the criminal trial that Sandler chose to conduct the meeting in his car. (R.R. 360)

juana to the point of sale. It was unclear whether the vehicle was used merely for transportation or whether the sale took place inside the vehicle.

Similarly, in *Commonwealth v. One 1988 Ford Coupe, VIN No. 1FABP41A9JF143651,* 393 Pa.Super. 320, 574 A.2d 631 (1990), the Superior Court upheld forfeiture of a vehicle used on one occasion to pick up cocaine sold to a police informant. Also, in *Commonwealth v. One 1979 Lincoln Four Door Sedan,* 344 Pa.Super. 171, 496 A.2d 397 (1985), the Superior Court affirmed the forfeiture of a vehicle used to bring food to workers at an illicit methamphetamine manufacturer.

Here, use of the Vehicle facilitated completion of the agreement to commit murder. "It is the use to which the property is put that renders property, otherwise lawful, rightful to have, use, and possess, subject to seizure and forfeiture." *One 1988 Ford Coupe,* 574 A.2d at 639.

Sandler used the Vehicle to negotiate and agree upon the terms of a murder-for-hire plot. Because he feared discovery, he used the Vehicle to avoid detection and to ease his suspicions that Echevarria was an undercover police officer. The Vehicle was not used merely as transportation, but also as a covert meeting place to solicit murder. I would therefore hold the Commonwealth's evidence established a sufficient nexus between the Vehicle and Sandler's illegal activity so as to transform the Vehicle into derivative contraband.

I would further conclude forfeiture is reasonable. In *Commonwealth v. Real Prop. and Improvements Commonly Known as 5444 Spruce Street, Phila.,* 574 Pa. 423, 832 A.2d 396 (2003), our Supreme Court adopted the principle enunciated in *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998),

that punitive forfeitures violate the Excessive Fines Clause of the Eighth Amendment of the U.S. Constitution[2] if the fine is grossly disproportional to the gravity of the offense. In determining whether the property's value is outweighed by the gravity of the offense, the Court identified the following factors to be considered: the penalty imposed compared to the maximum penalty available for the crime; whether the violation was an isolated matter or part of a pattern of misbehavior; and the resulting harm from the crime charged. *5444 Spruce Street.*

Sandler failed to offer any evidence of the Vehicle's value or that its value was grossly disproportionate to the gravity of his offense. He was convicted of solicitation to commit murder, which carries an offense gravity score of 13, *see* 42 Pa.C.S. § 9721, and was sentenced to serve 8 to 25 years. He was further ordered to pay a series of fines and costs amounting to $42,107.69.

Given the high offense gravity score, the lengthy prison sentence, the costs and fines imposed, and the lack of evidence regarding the Vehicle's value, I would conclude the Vehicle's value is not disproportionate to the offense committed. *5444 Spruce Street; Mitchell* (where vehicle was used to transport marijuana, forfeiture of a vehicle valued at $1,980 was not grossly disproportionate to the gravity of the offense or in excess of maximum fine).

I would reverse the trial court's order and require forfeiture of the Vehicle.

Judge LEADBETTER joins in this dissent.

---

2. U.S. Const. amend. VIII.