Valerie L. BEASTON

v.

Gregory A. EBERSOLE.

In re Gregory A. Ebersole.

Appeal of Commonwealth
of Pennsylvania.

Appeal of Commonwealth
of Pennsylvania.

Superior Court of Pennsylvania.

Argued Sept. 24, 2009.
Filed Dec. 15, 2009.

Michelle H. Sibert, Assistant District Attorney, for Commonwealth, appellant.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, ORIE MELVIN, BENDER, BOWES, PANELLA, DONOHUE, SHOGAN, and ALLEN, JJ.

OPINION BY SHOGAN, J.

¶ 1 Appellant, the Commonwealth of Pennsylvania ("the Commonwealth"), appeals from the orders entered on October 9, 2007 (1880 MDA 2007) and November 7, 2007 (1894 MDA 2007) in the Cumberland County Court of Common Pleas. After careful review, we reverse the order appealed at 1880 MDA 2007 and remand with instructions, and we vacate the order appealed at 1894 MDA 2007.[1]

¶ 2 The relevant facts and procedural history of this matter were set forth by the trial court as follows:

The origins of this controversy date back to a short lived relationship between [Gregory A. Ebersole ("Ebersole") and Valerie Beaston ("Beaston" or "the victim")] that ended almost five years ago. [Beaston] is a registered nurse who is now enrolled in law school. [Ebersole] is a retired Navy Seal who wants to attend law school.

At the time of their breakup [Beaston] made certain allegations of criminal wrongdoing against [Ebersole]. Based upon those allegations he was arrested and charged by the local police. Those charges were eventually dismissed by the county prosecutor. However, as a

result of his arrest, evidence was obtained which served as the basis for his conviction of a federal firearms violation.

[Ebersole] has consistently maintained that the allegations which led to his arrest (and ultimately the entry of the first protection from abuse order) were fabrications concocted by [Beaston].[2] He has since been obsessed with holding [Beaston] accountable for her "lies".[3] His obsession led to at least one contempt conviction for violating that first order.[4]

After the first order expired [Ebersole] continued his crusade for "justice". As part of his crusade he created and wore a sweatshirt with [Beaston's] picture and the words "Lying Skank" appearing on the front.[5] His unwillingness to let the matter die eventually led to the entry of the instant order on May 5, 2005.

While we have great respect for [Ebersole's] service to our country, we consider his quixotic search for justice to

---

[1]. Pursuant to 42 Pa.C.S.A. § 762, as a general rule, the Commonwealth Court has jurisdiction over appeals from final orders of the Courts of Common Pleas in civil actions commenced by the Commonwealth. Here, the action appealed at 1894 MDA 2007 was commenced by the Commonwealth. However, in this instance, jurisdiction is proper in this Court as the appellee in this matter, Gregory A. Ebersole, made no objection to this Court's jurisdiction. See 42 Pa.C.S.A. § 704 ("The failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule, shall, unless the appellate court otherwise orders, operate to perfect the appellate jurisdiction of such appellate court....").

[2] The original protection from abuse order was entered at 4215 Civil 2003. See the "Petition for Protection from Abuse" filed in the instant case at paragraph 16(a).

[3] The fact that the local prosecutor declined to pursue the state charges reinforced [Ebersole's] opinion that he is the victim in this case.

[4] See "Petition for Protection from Abuse" filed in the instant case at paragraph 16(a).

[5] Id. at paragraph 15.

be a fool's errand which may very well end in tragedy. At the time we entered the instant protection from abuse order the following exchange took place:

THE COURT: Okay. Now, Mr. Ebersole, ... when I sign this order, you may not have contact with her. You can—and that includes you can't e-mail her. You can't make threats about her to other people.... I've been doing this a lot of years and this obsession can only lead to no good if the two of you are in contact....

MR. EBERSOLE: I need to clarify one thing, Your Honor. This is not an obsession. This is not. Look at that woman. She's about 200 pounds. I don't want anything to do with that woman. She's hideous. This is not an obsession. I have no attraction to her.

. . .

THE COURT: Let me be clear with what I meant by obsession, Mr. Ebersole.... The obsession I was talking about is not with this woman.... The obsession I was talking about is ... an obsession with ... justice. This system, sir, is not perfect. It is the best in the world, but it's not perfect because it's manned by human beings. You served your country, and you served it honorably. Please don't throw that away in a quest for justice that may not be there.... I had a client and friend of mine who served his country and served it honorably. And he went through the same kind of quest that you're going through now. And it ended up tragically and horribly; and I don't want to see that happen to you, sir.

. . .

MR. EBERSOLE: I just need to clarify one thing.... Valerie Beaston is part of that quest because she

needs to be held accountable for the lies she told. If she is not held accountable—you said the system isn't perfect. It's not perfect. But somewhere along the line the only way the systems get better is when people make a stand and sometimes that takes self sacrifice.[6]

[6] Transcript of Proceedings, May 5, 2005, pages 48 to 52.

. . .

In September 2005 [Ebersole] was convicted of indirect criminal contempt for violating the order. On October 25, 2005 he was sentenced to serve 3 to 6 months in jail. At the time of sentence we had the following exchange with [Ebersole]:

THE COURT: I will parole you when you have given me your word that you will put this matter behind you and move on with your life. I will not parole you until then.

**You are a man of your word. When I get your word, I will cut the order paroling you with no contact with Miss Beaston and you move on.** Until I get that, I do not feel safe; and I'll have to keep you behind bars. Okay. So we understand each ofther [sic]?

[EBERSOLE]: Yes, sir, we do.

(emphasis added).[7]

[7] Transcript of October 25, 2005, Sentencing Proceedings, p. 4.

He elected to serve his maximum sentence rather than promise to drop his elusive "quest for justice".

Things were quiet for several months after [Ebersole] was released from prison in April of 2006. However, on November 1, 2006 [Beaston] filed a petition to extend the protection from abuse order which was scheduled to expire on November 5, 2006. We extended the

order pending a hearing on the matter which we scheduled for November 16, 2006.

Shortly after he was served with the petition for extension [Ebersole] engaged in the conduct giving rise to the most recent charge of indirect criminal contempt. He sent a disturbing e-mail to [Beaston's] sister which provided in relevant part as follows:

Sometimes in life, people wish they would have said something to another in hind site [sic] after there is no longer an opportunity to do so.... It is only after the others are gone when the old "I wish I would have told them" .... kicks in. I have always spoken my mind to you and Steve and was very sad to see that the both of you let the skank keep you from continuing our friendship.

The skank has just struck again to escalate the conflict with me. **At first there was plenty of time for the justice to which I have given my most solemn vow,** but her continued efforts to keep this war going have sabotaged any opportunities she might have been awarded to settle this. It is clear that she will never decide to do the right thing even if given a hundred years to consider it. Her actions have drastically shortened the time line. **Therefore, if there is anything you would ever wish to say to either of us, I suggest you do it soon.**

(emphasis added).[8] The e-mail was made even more disturbing by the fact that [Ebersole's] e-mail address is "vlbrnkiller". When asked if the e-mail address is of any significance to her, [Beaston] responded: "My initials, plus I'm an R.N., plus killer, meaning he's going to kill me." [9]

[8] Commonwealth's Exhibit # 1.

[9] Transcript of November 20, 2006, Proceedings, p. 12.

In addition [Ebersole] contacted several of [Beaston's] My Space friends to be added as friends on his own My Space site. [Ebersole's] site identified him as the "Skankn8er".[10] The "Skank" refers to [Beaston] and the "n8er" is like "terminator", making him the "Skankinator." [11] His site also contained the headline "Justice is Coming["] and played the Guns 'N Roses song *I Used to Love Her But I had to Kill Her.*[12] Finally, posted on his site, *inter alia,* was the following message:

**Above all I vowed justice against my false accuser, and I have never broken my word of honor.** I am just hoping to live a meaningful life in the interim and perhaps to do good along the way. Because of those desires, I was hoping that there would be lots of time left and that perhaps that my ex-lover/new enemy would develop a conscience and decide to come clean and end the war she started. Unfortunately, it seems she has chosen not only to not admit her first wrongs, but also, is continuing to escalate the conflict. Therefore, I honestly don't know how much time is left before she forces my hand.

(emphasis added).[13] [Beaston] received several calls from her friends directing her to those disturbing postings.

[10] Commonwealth Exhibit # 2.

[11] Transcript of November 20, 2006, proceedings, p. 11.

[12] Transcript of November 20, 2006, proceedings, p. 9 and Commonwealth Exhibit 2.

[13] Commonwealth Exhibit 2, November 20, 2006.

After [Ebersole] was released from federal custody things were again quiet until he made demand for the return of his computers. The Commonwealth re-

fused his request which led to him filing the instant petition [for the return of the computers]. At the October 9, 2007 hearing [Ebersole] testified that the computers at issue were purchased by and belonged to him. The Commonwealth opposed the return of the computers on the basis that they were derivative contraband because they were used to send the e-mails which led to his contempt conviction.

Trial Court Opinion, 1/31/08, at 2–6 (emphasis and footnotes original).

¶ 3 Following the October 9, 2007 hearing on Ebersole's motion for return of property,[2] the trial court directed the Commonwealth to return the computers to Ebersole.[3] On October 30, 2007, the Commonwealth filed a petition for forfeiture of the computers.[4] The trial court denied the Commonwealth's petition in an order dated November 7, 2007, utilizing the same rationale it employed in granting Ebersole's motion for return of property.[5] The Commonwealth timely appealed from both orders, and this Court consolidated the appeals *sua sponte* pursuant to Pa.R.A.P. 513.[6]

¶ 4 The Commonwealth's issue on appeal is as follows:

Did the lower court abuse its discretion in directing the return of derivative contraband [Ebersole] admittedly used to threaten the victim's life, in that the court did not want to upset the convicted, unrepentant stalker because the court did not want to 'further punish [Ebersole]' by refusing to give back his tools of terror?

The Commonwealth's Brief at 1.[7] At the outset, we note that the standard of review applied in cases involving petitions for forfeiture and motions for the return of property is for an abuse of discretion. *Commonwealth v. Smith*, 562 Pa. 609, 757 A.2d 354 (2000).

¶ 5 Here, the Commonwealth argues first that the trial court abused its discretion in granting Ebersole's motion for the return of property. Pennsylvania Rule of Criminal Procedure 588, concerning motions for the return of property, reads as follows:

2. The computers were seized by the Commonwealth in the fall of 2006. Trial Court Opinion, 1/31/08, at 1.

3. The October 9, 2007 order was filed at the trial court's Civil Docket Number 2005–2091, and it is the basis for the appeal at Superior Court Docket Number 1880 MDA 2007.

4. The Commonwealth's forfeiture petition was filed at the trial court's Miscellaneous Docket Number CP–21–MD–826–2007, and it is the basis for the appeal at Superior Court Docket Number 1894 MDA 2007.

5. As will be discussed, *infra*, the trial court reasoned that justice would not be served by the forfeiture, since they are not illegal *per se*, and Ebersole could just replace the computers.

6. When this matter was first appealed, Ebersole filed an appeal of his own with respect to the judgment of sentence imposed for his violation of the protection from abuse order. That appeal was docketed at 1704 MDA 2007, and it was disposed of in a memorandum filed February 3, 2009. Originally, that appeal was consolidated with the appeal in the instant case. However, after the aforementioned memorandum was filed, reargument was granted as to the appeals at docket numbers 1880 MDA 2007 and 1894 MDA 2007. Accordingly, the appeal at 1704 MDA 2007 is not presently before this Court, and we will address only the issues at 1880 MDA 2007 and 1894 MDA 2007.

7. We note our disapproval with the tone and tenor of the Commonwealth's phrasing of its issue. Such a dramatic presentation was not necessary, and we remind the Commonwealth of its duty under the Pennsylvania Code of Civility, Art. II.

## Motion for Return of Property

(A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

(B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

Pa.R.Crim.P. 588(A) and (B). The Commonwealth Court has explained the application of Pa.R.Crim.P. 588 as follows:

Under this rule, on any motion for return of property, the moving party must establish by a preponderance of the evidence entitlement to lawful possession. Once that is established, unless there is countervailing evidence to defeat the claim, the moving party is entitled to the return of the identified property. A claim for return of property can be defeated in two ways: an opposing party can establish that it, not the moving party, is entitled to lawful possession to the property or the Commonwealth can seek forfeiture claiming that property for which return is sought is derivative contraband. *Commonwealth v. Crespo,* 884 A.2d 960 (Pa.Cmwlth.2005). To meet its burden to defeat the motion for return of property, the Commonwealth must make out more than simply demonstrating that the property was in the possession of someone who has engaged in criminal conduct. It must establish a specific nexus between the property and the criminal activity.

*Commonwealth v. Howard,* 552 Pa. 27, 713 A.2d 89 (1998); *Commonwealth v. 2001 Toyota Camry,* 894 A.2d 207 (Pa. Cmwlth.2006). **When the Commonwealth sustains that burden, the burden of proof shifts to the property owner to disprove the Commonwealth's evidence or establish statutory defenses to avoid forfeiture.**

*Singleton v. Johnson,* 929 A.2d 1224, 1227 (Pa.Cmwlth.2007) *(en banc)* (emphasis added).

¶ 6 Initially, we note that decisions rendered by the Commonwealth Court are not binding on this Court. *Commonwealth v. Thomas,* 814 A.2d 754, 759 n. 2 (Pa.Super.2002). Here, however, we are persuaded by the reasoning set forth by the Commonwealth Court in *Singleton,* and we will follow it in the instant case. *See id.* (stating that while decisions of the Commonwealth Court are not binding upon this Court, we may elect to follow the Commonwealth Court decisions if we find the rationale persuasive).

¶ 7 Explaining its decision to grant Ebersole's petition, the trial court cited its long history of involvement in the case and expressed its view "that justice would not be served by forfeiting [Ebersole's] computers. Since they are not illegal *per se,* he could just replace them, *albeit* at great expense." Trial Court Opinion, 1/31/08, at 7. The trial court then commented:

[F]orfeiture of the computers would continue the escalation of this controversy. It would also give [Ebersole] one more reason to view himself as a victim, which we did not want to do. It is time for all parties involved to move on. We ordered the return of [Ebersole's] computers in the hope that it will be the first step in the right direction.

*Id.* at 7–8. Despite the trial court's analysis, we conclude the decision to return the

computers to Ebersole was an abuse of discretion.

¶ 8 Here, the record reveals Ebersole's unrelenting and settled intention of harassing and threatening Beaston *via* computer. As noted above, the computers at issue were devices Ebersole utilized to threaten and terrorize Beaston in violation of the PFA order.

¶ 9 At the hearing on Ebersole's motion to return the computers, the following exchange took place:

> [Attorney for the Commonwealth]: [Y]ou indicate that you look forward to getting back your computer so that you can **continue** to exercise your rights by speaking out about the lying skank [i.e., the victim, Valerie Beaston], is that right?
>
> [Ebersole]: **That's absolutely correct,** among other things, for personal business. **But since I have every right to speak out as I've been doing,** there shouldn't be anything wrong with that.

N.T., 10/9/07, at 7 (emphasis added).

¶ 10 The law is well-settled that

> [o]n a motion for return of property, the moving party has the burden of proving ownership or lawful possession of the items. The burden then shifts to the Commonwealth to prove, by a preponderance of the evidence, that the property is contraband.
>
> [D]erivative contraband is property which is innocent in itself but which has been used in the perpetration of an unlawful act. [T]he Commonwealth must establish a specific nexus between the property and the alleged criminal activity.

*Petition of Koenig,* 444 Pa.Super. 163, 663 A.2d 725, 726 (1995) (internal citations omitted).

¶ 11 Here, it is not disputed that Ebersole owns the computers, and the Commonwealth certainly proved, by a preponderance of the evidence, that a specific nexus exists between the property and the criminal activity inasmuch as Ebersole used the computers to harass and threaten Beaston (*e.g.*, the e-mails, his e-mail address, and his MySpace page). Moreover, the trial court specifically found that the Commonwealth proved this nexus and that the computers were derivative contraband. Trial Court Opinion, 1/31/08, at 6. As noted above, once the Commonwealth sustained its burden of proving a nexus between the property and the criminal activity, the burden of proof shifted to Ebersole to disprove the Commonwealth's evidence or establish statutory defenses to avoid forfeiture. *Singleton,* 929 A.2d at 1227.

¶ 12 We conclude that Ebersole did not disprove the Commonwealth's evidence, nor did he establish any defenses to avoid forfeiture. In fact, and as stated above, Ebersole specifically announced that he would continue to use the computers to harass Beaston. While we acknowledge that the trial court sought to bring this issue to a close, we conclude that its decision to return the computers constitutes an abuse of discretion. Therefore, we reverse the October 9, 2007 order, which was appealed at 1880 MDA 2007, and we remand this matter to the trial court to enter an order denying Ebersole's motion for return of property and directing the forfeiture of the computers as derivative contraband.

¶ 13 Our decision reversing the October 9, 2007 order at 1880 MDA 2007 would make discussion of the Commonwealth's appeal of the denial of its petition for forfeiture at 1894 MDA 2007 redundant. Therefore, we decline to address the issue at 1894 MDA 2007 in detail. Rather, we vacate the November 7, 2007

order denying the Commonwealth's petition for forfeiture as a nullity because said petition would not have been filed in the first instance, but for the October 9, 2007 order erroneously granting Ebersole's motion for return of property.

¶ 14 Order at 1880 MDA 2007 reversed. Case remanded with instructions. Jurisdiction relinquished.

¶ 15 Order at 1894 MDA 2007 is vacated. Jurisdiction relinquished.