J-A04039-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BETHANY L. NOTARO, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM C. PFAFFLE, | : | |
| | : | |
| Appellee | : | |
| | : | No. 1060 WDA 2014 |

Appeal from the Judgment Entered June 27, 2014,
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s):  AR 12-002473

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED APRIL 02, 2015**

Bethany L. Notaro (Notaro) appeals from a judgment entered after a jury awarded her no damages in a car accident case.  We affirm.

Notaro was stopped in her vehicle, waiting to merge into traffic, when a vehicle driven by William C. Pfaffle (Pfaffle) rear-ended her.  Notaro filed a complaint against Pfaffle wherein she claimed that Pfaffle caused the accident and that she suffered injuries as a result of the accident.  At the jury trial, Pfaffle conceded that his negligence caused the accident.  The jury found that Pfaffle's negligence was a factual cause in bringing about harm to Notaro; however, the jury did not award Notaro any damages.

Notaro timely filed a post-trial motion wherein she sought a new trial based upon a claim that the verdict was contrary to the weight of the

_____

* Retired Senior Judge assigned to the Superior Court.

evidence presented at trial. The trial court denied the motion, and a judgment was entered.

Notaro timely filed a notice of appeal. The trial court did not order her to comply with Pa.R.A.P. 1925(b), but the court did issue an opinion in support of its decision to deny the post-trial motion. In her brief to this Court, Notaro asks us to consider this question:

> Whether the trial court committed a clear abuse of discretion in denying [Notaro's] post-trial motion in a case where the jury verdict was against the weight of the evidence, bore no reasonable relationship to the evidence and created an inconsistent verdict where negligence [was] admitted and causation [was] found by the jury[?]

Notaro's Brief at 4.

> Appellate review of weight of the evidence claims is limited. It is well-settled that:

> [a]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*In re Estate of Smaling*, 80 A.3d 485, 490 (Pa. Super. 2013) (citation omitted).

Notaro claims that the trial court erred by denying her post-trial motion for a new trial. According to Notaro, the jury's verdict was contrary to the weight of the evidence because the jury did not award her damages despite the facts that: Pfaffle conceded that he caused the accident; the jury found that Pfaffle's negligence was a factual cause of harm to Notaro; and Notaro presented the jury with "uncontested evidence of injuries[.]" Notaro's Brief at 12.

In support of her argument, Notaro relies heavily on a case she captions as "Anastasi v. Old Forge Borough." Notaro's Brief at 12-16. Notaro does not provide a citation to this case. Notaro attached the case to her post-trial motion. Based upon our review of that attachment, it appears that **Anastasi** is an unreported, non-precedential memorandum opinion of the Commonwealth Court. We further observe that, even if the Commonwealth Court would have published **Anastasi**, "decisions rendered by the Commonwealth Court are not binding on this Court." **Beaston v. Ebersole**, 986 A.2d 876, 881 (Pa. Super. 2009). Because **Anastasi** is of no precedential value, it provides no basis upon which to grant relief to Notaro.

Notaro also contends that our Supreme Court's decision in **Neison v. Hines**, 653 A.2d 634 (Pa. 1995), supports her claim that the trial court erred by denying her post-trial motion for a new trial. We disagree.

While driving a pickup truck, Hines rear-ended an automobile driven by Neison. Hines admitted liability at trial; the jury was asked to determine

how much in damages Hines should pay Neison. The jury awarded no damages to Neison. Neison filed a post-trial motion seeking a new trial based upon a claim that the verdict was contrary to the weight of the evidence presented at trial. The trial court granted the motion; however, this Court reversed that decision on appeal.

The Supreme Court granted Neison's petition for allowance of appeal and ultimately reversed this Court's decision. The Supreme Court explained, in part, as follows.

In the instant case, uncontroverted evidence establishes that Neison was involved in a violent automobile accident caused by Hines, and due to her negligence, which was conceded at trial. The accident caused Ms. Neison's head to shatter the rear window of the car. The impact produced trauma in the form of a large lump on the back of Neison's head. As a result of the collision, the rear end of Ms. Neison's car had been "wiped out" and the car looked like "an accordion." Her car was struck with such force that the glasses which Neison was wearing prior to the accident were found by a volunteer firemen on the trunk of the vehicle. In fact, the force of the collision caused the trunk to crack and split. The record also shows that Ms. Neison went immediately to the hospital for treatment of the head injury. She returned two days later complaining of neck and shoulder pain, and was told that the pain was a natural result of the type of injury that she had sustained. Because of her continuing pain, she consulted a specialist, Dr. Lee, who, after examination diagnosed her as having post-traumatic myofascitis pain syndrome in the neck and scapula, cervical sprain syndrome, and a herniated disk. Dr. Lucas also testified that he examined Neison, and that she suffered from fibromyalgia, or inflammation of the muscle tissue, and cervical strain. He then opined that her condition was directly caused by her automobile accident. [Hines'] expert, Dr. Mitchell, testified that Ms. Neison "exhibited a diagnosis of a healed neck sprain and a healed scapular or shoulder blade sprain." He further testified that recovery from soft tissue damage such as Ms. Neison's usually occurs in three to five months. Thus, the uncontested evidence amply

- 4 -

demonstrates that Ms. Neison was involved in a violent automobile accident and suffered from soft tissue injuries, a cervical sprain, and a herniated disk.

In light of this uncontroverted evidence, we cannot find that the trial court abused its discretion in ordering a new trial. Common sense dictates that a collision of this severity caused by the negligence of another would lead to severe and painful injuries, although the evidence offered at trial left room for disagreement as to whether the pain resulting from Ms. Neison's injuries was as severe as she claimed or whether the accident was in fact causative. However, the jury's decision to find for Hines and award no damages for pain and suffering bears no rational relationship to the evidence produced at trial. The jury's decision to disbelieve all the evidence presented during the trial defies common sense and is indeed shocking.

**Neison**, 553 A.2d at 637-38 (citations and footnote omitted).

As to this case, the trial court summarized the evidence presented at trial as follows.[1]

The jury in the instant case could have found the following facts by a preponderance of the evidence. On July 11, 2010, [Notaro] was stopped at an entrance ramp to a highway. There was a passenger in [her] vehicle, a large SUV hatchback. [Notaro] was wearing her seat belt and her hands were on the steering wheel. [Pfaffle's] vehicle was stopped about a half of a car length behind [Notaro].

After observing a break in the traffic, [Pfaffle] assumed [Notaro] was merging onto the highway. But when [Pfaffle] looked back he discovered [Notaro] had stopped. Although he applied his brakes, [Pfaffle] could not avoid the crash. [Pfaffle] was travelling three to five miles per hour at impact. His airbag did not deploy and he was not injured.

[Notaro] never lost consciousness. Her head struck nothing in the vehicle and she was not cut or bleeding. Her air bag did not deploy and she exited her vehicle without assistance.

---

[1] We have reorganized the trial court's opinion by breaking it up into smaller paragraphs.

[Notaro] did not complain to [Pfaffle] of any injuries. [Notaro]'s vehicle sustained a broken taillight and scratched bumper. There was no testimony of record that [Pfaffle]'s vehicle was damaged.

At the scene [Notaro] declined to be taken for medical treatment. She and her passenger continued on to their original destination, a garden store. [Notaro] did not see her primary care physician (PCP), Dr. Santiago, until four days after the accident. She complained of pain "in the right side of [her] shoulder, going up to [her] head and in [her] neck, going down [her] arm, but not very far, and then in [her] left shoulder blade and upper back and a little bit into [her] right shoulder blade." [Notaro] testified of swelling in her face and locking of her jaw, symptoms she associated with TMJ (temporomandibular joint disorder), for which she had previously treated with an orthodontist. At her deposition she stated the lockjaw, swelling and head pain, symptoms of TMJ, were the same before and after the accident. X-rays failed to reveal any broken bones. Dr. Santiago prescribed a muscle relaxer and strengthening exercises.

[Notaro] did not miss any work as a result of this accident. Although she testified she had trouble doing things with/for her young daughter, she also testified she "didn't like feeling dopey on medication," and did not use it because she "wasn't able to function in all of the things that [she] had to do." Other than activities related to her daughter, [Notaro] did not testify as to specific activities in which she was unable to engage.

No further medical treatment was sought until November 18, 2010, when [Notaro] was seen by Dr. Puri, a PCP who prescribed a different muscle relaxer. [Notaro] returned on December 6, 2010, for a prescription refill. Although Dr. Puri suggested physical therapy, [Notaro] attended only one session.

[Notaro] had begun treating for TMJ with her orthodontist, Dr. Purvis, in October or November of 2009. At that time her symptoms included locking of her jaw and soreness of her face that extended to her ear. [Notaro] returned to Dr. Purvis two to four times after the accident. On November 30, 2011, Dr. Purvis authored a letter wherein he reported seeing [Notaro] after the accident, but noted that the "treatment was not directed toward the resolution of any problems associated with recent trauma"

and opined that he "doubted that any information [he] could provide ... would have any correlation to [Notaro's] accident."

Trial Court Opinion, 8/6/2014, at 5-7 (citations and footnotes omitted).

The court offered the following analysis in support of its decision to deny Notaro's post-trial motion for a new trial.

> At trial, [Notaro]'s counsel conceded that if the jury found [Notaro]'s injuries to be *de minimus*, it would not have to award any damages. All of [Notaro]'s complaints were subjective. She presented no witnesses, such as her passenger, to corroborate her claims. [Notaro]'s two office visits to Dr. Puri were essentially related to medication. Neither party presented a doctor or a video deposition at trial. Each side referred to excerpts from [Notaro]'s medical records. [Notaro] chose to forego physical therapy. The jury could have found [Notaro]'s alleged symptoms were controlled by medication and, therefore, insignificant.
>
> Even though I would have awarded damages had this case proceeded non-jury, the jury's verdict did not shock my conscience. Moreover, the jury's finding that any injuries were so minor as to not warrant compensation did not defy common sense or logic. The verdict was not against the weight of the evidence.
>
> I also disagree with [Notaro]'s argument that the verdict was inconsistent. "[A] claim of verdict inconsistency is not the same complaint as a claim sounding in evidentiary weight. A verdict may be perfectly consistent and yet be a shock to the losing party, as well as a shock to the conscience of the jurist who oversaw the presentation of evidence." ***Criswell v. King***, 834 A.2d 505 (Pa. 2003). A true case of verdict inconsistency can be found in ***City of Philadelphia v. Grey***, 633 A.2d 1090 (1993). There the jury answered "no" to a question asking whether a defendant driver was casually negligent, but assigned 25% causal negligence to the same driver in a subsequent answer. In the case at bar, the jury found some injury caused by [Pfaffle]'s negligence, but believed it was not compensable.

Trial Court Opinion, 8/6/2014, at 7-8.

We can discern no error in the trial court's rationale. Unlike the circumstances in **Nieson**, this case did not involve a violent collision which would necessarily and obviously cause a compensable injury. Rather, this case involved a relatively minor accident and Notaro's subjective claims of injuries and related pain.

As this Court has explained,

> [t]he existence of compensable pain is[] an issue of credibility and juries must believe that plaintiffs suffered pain before they compensate for that pain. A jury is not required to award a plaintiff any amount of money if it believes that the injury plaintiff has suffered in an accident is insignificant. "Insignificant" means the jury could have concluded that any injury plaintiff suffered did not result in compensable pain and suffering. While a jury may conclude that a plaintiff has suffered some painful inconvenience for a few days or weeks after the accident, it may also conclude that the discomfort was the sort of transient rub of life for which compensation is not warranted.

**Lombardo v. DeLeon**, 828 A.2d 372, 375 (Pa. Super. 2003) (citations and some quotation marks omitted).

Here, the jury's verdict slip indicates that they concluded that Pfaffle's negligence caused harm to Notaro and that harm was insignificant and unworthy of compensation. The jury's determination was consistent with the record and the law. For these reasons, we conclude that the trial court did not abuse its discretion or commit an error of law by denying Notaro's post-trial motion for a new trial. Consequently, we affirm the judgment.

Judgment affirmed.

J-A04039-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/2/2015