J-S18036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CAINE PELZER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLOBAL TEL LINK CORPORATION | : | No. 123 WDA 2024 |

Appeal from the Order Entered April 25, 2023
In the Court of Common Pleas of Erie County
Civil Division at No(s): 11169-2021

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: FEBRUARY 24, 2025**

Caine Pelzer ("Pelzer") appeals *pro se* from the order dismissing his amended complaint against Global Tel Link Corporation ("GTL"). We affirm.

We summarize the background of this appeal from Pelzer's amended complaint. Pelzer is serving a life sentence and has been housed in numerous state correctional institutions ("SCIs"), as well as county prisons. Pelzer purchased at least three tablets from GTL, a Virginia-based corporation: the first being a version 1.0 tablet; the second, a version 2.0 tablet, which he purchased in 2018 and which GTL replaced in 2018 or 2019; and the third, a version 2.0 tablet he purchased in 2020. Pelzer encountered numerous difficulties setting up, using, and servicing his tablets, which required using "kiosks" to communicate with GTL and purchase or download updates, apps, and files. As a prisoner in SCIs, Pelzer was also subject to the policies of the

Department of Corrections. The difficulties worsened when he was in solitary confinement.

In 2019, Pelzer filed a complaint ("the prior complaint") against GTL related to his tablets. When Pelzer petitioned to proceed *in forma pauperis* ("IFP"), the trial court denied the petition and dismissed the prior complaint because Pelzer was an abusive litigator. ***See*** 42 Pa.C.S.A. § 6602(f)(1).[1] The Commonwealth Court affirmed the dismissal of the prior complaint. ***See Pelzer v. Glob. Tel Link Corp.***, 471 C.D. 2019, 2020 WL 1983343 (Pa. Cmwlth. 2020) (mem. op. *per curiam*).

In June 2021, Pelzer filed the instant complaint against GTL for fraud, breach of contract, interference with prospective contractual relations, and violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[2] In January 2022, Pelzer filed an amended complaint alleging

---

[1] Section 6602(f)(1) is also referred to as the "three strikes rule" of the Prison Litigation Reform Act ("PLRA"). The PLRA defines prison litigation as "[a] civil proceeding arising in whole or in part under Federal or State law with respect to the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison." 42 Pa.C.S.A. § 6601. The three strikes rule of Section 6602(f) of the PLRA only restricts a prisoner's ability to pursue actions regarding prison conditions when IFP. ***See Jae v. Good***, 946 A.2d 802, 809 (Pa. Cmwlth. 2008). Thus, "where a prisoner pays the filing fees and costs associated with commencing prison conditions litigation, . . . the trial court should not dismiss the matter solely based on the 'three strikes rule' . . . ." ***Lopez v. Haywood***, 41 A.3d 184, 188 (Pa. Cmwlth. 2012). Although this Court is not bound by the decisions of the Commonwealth Court, we may follow those decisions as persuasive. ***See Beaston v. Ebersole***, 986 A.2d 876, 881 (Pa. Super. 2009)

[2] ***See*** 73 P.S. §§ 201-1 to 201-10.

excessive fees and further difficulties using tablets and seeking refunds when he enrolled in a GTL tablet program at Luzerne County prison. Additionally, he asserted GTL failed to return funds left in tablet and telephone accounts at Luzerne County prison after he left and returned to an SCI.[3] Pelzer concluded it was unlawful for GTL to enjoy a monopoly and violate the Federal Communications Act, the Pennsylvania Consumer Fraud Act, the Pennsylvania Public Utilities Statutes, and the takings clauses of the Pennsylvania and United States Constitutions. Although Pelzer paid the filing fees for his complaints, he did not serve GTL, and GTL did not respond to the complaints.

In March 2022, Pelzer began filing for the entry of a default judgment against GTL.[4] In November 2022, GTL answered to one of Pelzer's motions for default judgment and objected to Pelzer's failure to serve GTL with original process, as well as other defects in the notice of, and motion for, default judgment.[5] The matter remained undecided until April 2023, when Pelzer filed an "application for original process." Upon the assignment of the application,

_____

[3] We refer to Pelzer's complaint and amended complaint collectively as "complaints."

[4] Pelzer also filed a judicial conduct complaint in March 2023 concerning the inaction in this case.

[5] Pelzer filed several motions for the entry of default judgment listing different addresses for GTL, as well as correspondence concerning his attempts to serve GTL. Additionally, Pelzer attached his letters with GTL's local counsel regarding the prior and present litigation. GTL's local counsel stated he was not authorized to accept service on behalf of GTL.

the trial court dismissed the complaints with prejudice because Pelzer was an abusive litigator. **See** Order, 4/25/23, at 1 (citing section 6602(f)(1)).

Pelzer timely appealed to the Commonwealth Court, which transferred this matter to this Court.[6] Pelzer complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. In response to Pelzer's assertion that the court erred in dismissing the complaints under section 6602(f)(1) when he paid the filing fees for his complaint, the trial court conceded error. **See** Trial Ct. Op., 9/25/23, at 3; **accord Lopez**, 41 A.3d at 188. The trial court, however, concluded that its error was harmless because Pelzer's complaints also failed to state a claim. **See** Trial Ct. Op., 9/25/23, at 3. The court thus determined dismissal would also have been proper under 42 Pa.C.S.A. § 6602(e)(2). **See** Trial Ct. Op., 9/25/23, at 3.

Pelzer's question involved in this appeal focuses on the trial court's initial dismissal of his complaints under section 6602(f)(1)'s abusive litigator provision. **See** Pelzer's Brief at 3. Pelzer later acknowledges the trial court's concession of error in that regard and thereafter responds to the trial court's determination his complaints failed to state claims against GTL. **See id**. at 20-32. Under the circumstances of this case, we will address Pelzer's

---

[6] **See** Order, 576 C.D. 2023, 1/5/24, at 1 (concluding the Commonwealth Court lacked jurisdiction over this appeal from the dismissal of Pelzer's civil action against GTL arising from his purchase of a GTL tablet).

arguments that dismissal of his complaints was improper under section 6602(e)(2).[7]

Section 6602(e)(2) provides:

Notwithstanding any filing fee which has been paid, the court shall dismiss prison conditions litigation at any time, including prior to service on the defendant, if the court determines . . . the prison conditions litigation . . . fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief.

42 Pa.C.S.A. § 6602(e)(2).

Where the trial court dismisses a complaint *sua sponte* for failure to state a claim, the standard of appellate review is *de novo*, and the scope of review is plenary. *See Johnson v. Little*, 302 A.3d 1260, 2023 WL 4358993 at *2 n.3 (Pa. Cmwlth. 2023) (mem. op.).[8] When reviewing the sufficiency of

_____

[7] Although Pelzer's Rule 1925(b) statement did not include this issue, waiver is not appropriate because the trial court raised section 6602(e)(2) as a basis for dismissal for the first time in its Rule 1925(a) opinion. *See Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 981 n.32 (Pa. Super. 2023). We remind Pelzer an appellate court will not ordinarily consider a question unless it is stated in the statement of questions involved, or is fairly suggested thereby, and the argument section of his brief should be divided into as many parts as there are questions to be argued. *See* Pa.R.A.P. 2116(a), 2119(a). We decline to find waiver here, however, because the defects in Pelzer's brief do not impede meaningful review. *See Gould v. Wagner*, 316 A.3d 634, 639 (Pa. Super. 2024)

[8] *See* Pa.R.A.P. 126(b). Pelzer does not question the applicability of section 6602(e)(2), and our review reveals Pelzer's complaints often enmesh his grievances concerning his GTL tablets with conditions in prison and actions by corrections officers. We refer to Commonwealth Court decisions where necessary because there are few Superior Court decisions applying section 6602(e)(2).

a complaint, our Rules of Civil Procedure require the material facts on which a cause of action is based be stated in a concise and summary form. *See Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004) (citing Pa.R.Civ.P. 1019(a)). "Pennsylvania is a fact-pleading jurisdiction. A complaint must therefore not only give the defendant notice of what the plaintiff['s] claim is and the grounds upon which it rests, but it must also formulate the issues by summarizing those facts essential to support the claim." *Youndt v. First Nat. Bank of Port Allegany*, 868 A.2d 539, 544 (Pa. Super. 2005).

"A *pro se* litigant is granted the same rights, privileges and considerations as those accorded a party represented by counsel; however, *pro se* status does not entitle a party to any particular advantage because of his or her lack of legal training." *First Union Mortgage Corp. v. Frempong*, 744 A.2d 327, 333 (Pa. Super. 1999) (citation omitted). Although courts construe *pro se* filings liberally, a *pro se* plaintiff, and appellant, must follow the procedural rules of court. *See Jones v. Rudenstein*, 585 A.2d 520, 522 (Pa. Super. 1991); *Danysh*, 845 A.2d at 262-63. A court cannot act as the party's counsel or ignore procedural requirements to reach the merits of an argument or claim. *See Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014); *Jones*, 585 A.2d at 522.

As noted above, Pelzer argues that he sufficiently pleaded his claims against GTL for fraud, breach of contract, violations of the UTPCPL, and interference with contracts. We address the underlying claims separately.

A claim for fraud requires a plaintiff to plead:

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

**Marion v. Bryn Mawr Tr. Co.**, 288 A.3d 76, 87 (Pa. 2023) (citation omitted). A plaintiff must aver fraud with particularity and adequately explain the nature of the claim so that an opponent can prepare a defense. **See Youndt,** 868 A.2d at 544-45. Additionally, the complaint must be sufficient to convince a court that the averments are not merely subterfuge. **See id**. at 545; **accord Bata v. Cent.-Penn Nat. Bank of Philadelphia**, 224 A.2d 174, 179 (Pa. 1966) ("Averments of fraud are meaningless epithets unless sufficient facts are set forth which will permit an inference that the claim is not without foundation nor offered simply to harass the opposing party and to delay the pleader's own obligations").

Pelzer contends he pleaded (1) GTL fraudulently enforced shrink- and browse-wraps agreement without allowing him to opt out; (2) continually changed the terms of the agreements to immunize itself and its subsidiaries from liability; (3) misrepresented the capabilities and functionality of version 2.0 tablets; and (4) failed to provide refunds for defective products and services, which defrauded him, as well as his friends and family. **See** Pelzer's Brief at 21-22. Pelzer asserts he justifiably relied on GTL's promises made in

advertising campaigns and contractual agreements when purchasing each tablet, but those promises never materialized. ***See id***.

The trial court determined Pelzer's complaints failed to state his reasonable reliance on a material misrepresentation by GTL. ***See*** Trial Ct. Op., 9/25/23, at 4-5. The trial court noted Pelzer continued to purchase GTL's tablet, even though he was aware of their limitations and filed a prior complaint concerning similar issues with the GTL tablets. ***See id***.

Following our review, we conclude Pelzer failed to state a claim of fraud for different reasons than stated by the trial court. ***Cf***. ***DiNardo v. Kohler***, 270 A.3d 1201, 1208 (Pa. Super. 2022) (affirming a trial court's decision to sustain preliminary objections by reaching the same result for different reasons), *aff'd*, 304 A.3d 1187 (Pa. 2023). A review of Pelzer's complaints reveals a myriad of allegations about his tablets' lack of functionality, the availability and pricing of downloads, other costs associated with email and communication features, and GTL's refusal to honor refund requests. Although Pelzer repeatedly used the term "fraud" or "fraudulently" to describe his grievances with GTL, the complaints lack a sufficiently specific averment of a representation made by GTL, made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, with the intent of misleading

another into relying on it. *See Marion*, 288 A.3d at 87. Thus, Pelzer has not sufficiently pleaded a claim for fraud.[9]

As to breach of contract, Pelzer's argument is difficult to follow. Pelzer suggests arbitration clauses are not enforceable because he did not agree to arbitrate. *See* Pelzer's Brief at 25-26. It suffices to say that this issue fails because Pelzer has not established an essential term, which GTL breached, or damages. *See 412 N. Front St. Associates, LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa. Super. 2016) (summarizing the elements of an action for breach of contract as: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and[] (3) resultant damages"). There is no indication GTL sought to compel arbitration of Pelzer's claims. Thus, Pelzer has failed to establish his complaints stated a viable cause of action for breach of contract.

_____

[9] Pelzer's brief refers us to paragraphs 22-26, 30-31, 44-45, and 81-93 of his complaint. *See* Pelzer's Brief at 22. These references do not persuade us otherwise. In paragraph 81 of his complaint, Pelzer lists a set of general representations made by GTL, namely, that the tablets could purchase all commissary orders; purchase books, and not just religious books, for free; Facetime or conduct prison visits; send and receive pictures from friends and family; send and receive institutional request slips, grievances, sick call slips, dental slips, and program review committee slips; and make all phone calls; and receive all departmental documents and policies. *See* Compl., 6/7/21, at ¶ 81. However, his remaining allegations pertain to the sale of music files that are on a restricted song list, *see id*. ¶¶ 84-87, his purchases of songs that are not what the music catalog represented, *see id*. at ¶¶ 44-45, the accessibility of kiosks while in solitary confinement, *see id*. at ¶¶ 22-23, 83, and corrections officers withholding his tablets, returning his tablets in odd configurations, or taking files after syncing his tablets, *see id*. at ¶¶ 24-25, 30-31. Such assertions appear to go to prison policies rather than GTL's conduct or failures to fulfill alleged promises to Pelzer.

Pelzer next asserts his complaints stated claims for violations of the UTPCPL. The UTPCPL seeks to protect the public from unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. **See Fazio v. Guardian Life Ins. Co. of Am.**, 62 A.3d 396, 405 (Pa. Super. 2012). Anyone who suffers any ascertainable loss of money or property as a result of an unlawful method, act or practice has a private right of action under the UTPCPL. **See id**.; **see also** 73 P.S. § 201-9.2. The UTPCPL contains a "catchall" provision that makes unlawful "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). "The plain language of the current statute imposes liability on commercial vendors who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or misunderstanding. That is all that is required. The legislature required neither carelessness nor intent when a cause of action is premised upon deceptive conduct." **Gregg v. Ameriprise Fin., Inc.**, 245 A.3d 637, 649 (Pa. 2021)

Pelzer argues he sufficiently pleaded facts to support an inference of deceptive conduct and an ascertainable loss. Pelzer contends GTL represented each tablet he purchased would not suffer the limitations previous tablets suffered. **See** Pelzer's Brief at 27. He further claims GTL advertised "there would be no limitations and any software[ and] hardware issues would be immediately fixed." **Id**. This, he asserts, "turned out to be deceptive and fraudulent." **Id**. Pelzer also contends that while at Luzerne County prison,

- 10 -

GTL charged unconscionable rates and fees, and GTL took funds from his account which he, his friends, and his family deposited, without notice. ***See id***. at 29-30.

The trial court determined Pelzer failed to allege fraudulent or deceptive acts by GTL that resulted in harm to Pelzer. ***See*** Trial Ct. Op., 9/25/23, at 6. The court concluded Pelzer "was fully aware of the limitations of GTL's tablets and the difficulties presented by the interplay between Department of Corrections' policy and GTL tablet capability when he procured his tablets." ***Id***.

Initially, we note Pelzer has not provided meaningful reference to or discussion of the record. His only reference to his complaints points to general allegations concerning GTL's tablet program at Luzerne County prison. ***See*** Pelzer's Brief at 28 (citing Am. Compl., 1/13/22, at 7-9).[10] With respect to

_____

[10] Pages 7 to 9 of the amended complaint alleged Pelzer "had to become part" of a GTL tablet program at Luzerne County prison and was forced to share a tablet with other inmates. ***See*** Am. Compl., 1/13/22, at ¶¶ 50-51. GTL's website allowed Pelzer's family and friends to sign up as contacts and deposit funds into Pelzer's accounts. ***See id***. at ¶ 54. The tablet program charged a standard fee of ".03 cents per minute or .05 cents per minute" for two standard "apps within apps." ***Id***. at ¶ 56. Those standard apps permitted him to log on to other apps like "I Heart Radio," which also charged membership fees. ***See id***. at ¶ 57. Moreover, Pelzer asserted GTL allowed him to sign up for subscriptions to apps like "I Heart Radio" but failed to provide protections to cancel subscriptions or seek refunds once he left Luzerne County prison and returned to an SCI.

The tablet program also charged ".25 cents per minute" for video visits, but the video calls had distorted video, would lose audio, or simply drop calls. ***See id***. at ¶ 59. Pelzer asserted these fees constituted "astronomical, illegal

*(Footnote Continued Next Page)*

his argument that GTL led him to believe he would not have the same difficulties he experienced with previous GTL tablets, no relief is due. While Pelzer may have hoped there would be "no limitations and any software [and] hardware issues would be immediately fixed," Pelzer's Brief at 27, Pelzer failed to argue in his brief, or show where in his complaints he alleged the existence of a sufficiently specific misrepresentation to conclude that GTL engaged in conduct that had potential to deceive and which created a likelihood of confusion or misunderstanding. Indeed, having reviewed the complaint, we are unable to disentangle Pelzer's unmet expectations regarding the tablets and GTL's services from the policies of the Department of Corrections and the conduct of corrections officers.

Furthermore, aside from listing additional grievances resulting from his participation in the Luzerne County tablet program, Pelzer has not alleged any deceptive or fraudulent conduct by GTL. Indeed, Pelzer only stated his

_____

connection fees[,]" that were eight times more than he paid for similar services in SCIs. *See id*. at ¶ 61.

Pelzer also alleged the tablet program at Luzerne County prison had a glitch where GTL would deduct the full fee for a twenty-minute call, even if he did not receive a call. *See id*. at ¶¶ 61-62. He asserted there were numerous times when GTL never reimbursed him or his contacts for such fees, and GTL provided no mechanism for his contacts to be reimbursed for unused funds left on a separate telephone account after he left Luzerne County prison. *See id*. ¶¶ 63, 65. GTL, furthermore, did not allow Pelzer to use funds from his Luzerne County prison accounts at SCIs. *See id*. at ¶ 67. Pelzer concludes "As a result, GTL illegally kept all of the unused account money from [him and] his family, after [he] was moved back to the [SCI] at Phoenix without warning." *Id*. at ¶ 68.

participation in the tablet program did not involve a contract; however, he offered no allegations that he was unaware of GTL's policies, or the fees and charges assessed by GTL, when electing to participate in the Luzerne County's tablet program. Thus, we conclude Pelzer has failed to demonstrate reversible error in the trial court's dismissal of his UTPCPL claims.

Next, as to interference with a prospective contractual relationship, Pelzer was required to plead: (1) a prospective contractual relationship; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct. **See Phillips v. Selig**, 959 A.2d 420, 428 (Pa. Super. 2008).

Pelzer initially argues that GTL directed prison officials to ensure he was unable to opt out of the agreements and terms associated with his purchase of tablets. **See** Pelzer's Brief at 31. Pelzer also asserts that GTL prohibited him from contracting with various app providers, such as "I Heart Radio." **See id**. at 32. Pelzer adds the failure to identify a prospective contract does not require dismissal, so long as there is evidence that GTL engaged in conduct constituting interference. **See id**.

The trial court concluded Pelzer's complaints failed to state a claim upon which relief could be granted because the gist of Pelzer's complaint was that GTL supplied tablets to prison inmates with knowledge that Department of Corrections' policy would "substantially limit the tablets' functionality and/or

the inmates' access to a working tablet and ability to seek redress for same." Trial Ct. Op., 9/25/23, at 5. The trial court thereafter determined no relief could be granted because Pelzer "has no contractual relationship or prospective contractual relationship with the third[-]party [the Department of Corrections." *Id*. at 6.

To the extent the trial court noted the bulk of Pelzer's grievances focused on prison policies limiting the functionality of GTL's tablets, we agree that no relief is due. To the extent Pelzer asserts that GTL interfered with his freedom to contract with third-party apps, such as "I Heart Radio," and his access was more limited than general public, Pelzer has not pleaded that GTL prohibited accessing third-party apps. Moreover, it is reasonable to infer that prison policy would not allow the same type of access to third-party apps as the general public. Therefore, Pelzer's allegations do not establish actual interference by GTL, without justification, and with the purpose of preventing the consummation of contractual relation with third-party apps. *See Phillips*, 959 A.2d at 428. Thus, we discern no basis to conclude that Pelzer pleaded GTL's purpose or intent to harm Pelzer by preventing the prospective relation from occurring.

Lastly, we note that Pelzer asserts that the trial court failed to consider whether he stated claims for violations of anti-trust law, the Federal Communications Act, a consumer fraud act, the Pennsylvania Public Utilities Statutes, and the takings clauses of the Pennsylvania and United States Constitutions. *See* Pelzer's Brief at 28-29. Pelzer adds that GTL took funds

- 14 -

left in his accounts, "and the state remit[ted] less or more than 40% of the rates charged and 50% or more to the County of Luzerne." **See id**. at 30. However, his arguments on this point are underdeveloped and rely on conclusory statements of law with little to no citation to relevant law.[11] Therefore, these arguments are waived. **See Coulter**, 94 A.3d at 1088; **Jones**, 585 A.2d at 522.

In sum, Pelzer has failed to establish his complaints stated a claim upon which relief could be granted, and we affirm the trial court's dismissal of the complaints pursuant to 42 Pa.C.S.A. § 6602(e)(2).[12]

Order affirmed.

---

[11] We add that we discern no basis to conclude Pelzer's complaints stated viable claims under these theories. **Cf. Bowers v. T-Netix**, 837 A.2d 608, 612 (Pa. Cmwlth. 2003) (discussing immunity from anti-trust claims under the state action doctrine); **McGuire v. Ameritech Servs., Inc.**, 253 F.Supp.2d 988, 1012 (S.D. Ohio 2003) (discussing the "filed rate doctrine" to claimed violations of the Federal Communications Act, 47 U.S.C.A. § 203). Indeed, it is unclear whether Pelzer would be in the right jurisdiction to allege violations of federal law. **See** 47 U.S.C.A. § 207 (providing remedies for damages under the federal Telecommunications Act by complaint to the Federal Communications Commission or in any district court of the United States of competent jurisdiction); **Pennsylvania Auto. Ass'n v. Com. State Bd. of Vehicle Mfrs., Dealers & Salespersons**, 360, 550 A.2d 1041, 1045 (Pa. Cmwlth. 1988) ("Jurisdiction over claims arising under the Sherman [Anti-Trust] Act is vested exclusively in the federal courts").

[12] Because we conclude the trial court properly dismissed Pelzer's complaints, we need not address his arguments he served GTL with his complaints and was entitled to the entry of a default judgment.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>2/24/2025</u>