# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| IN RE: DUA DIAMONDS, INC. AND JASMEEN KAUR | : | No. 85 EM 2017 |
| | : | |
| | : | Appeal from the Order of the Superior |
| | : | Court at No. 1770 EDA 2017 dated |
| PETITION OF: DUA DIAMONDS, INC. AND JASMEEN KAUR | : | the Order Entered of the Philadelphia |
| | : | County Court of Common Pleas at No. |
| | : | CP-51-MD-0001848-2017 dated May |
| | : | 26, 2017 |
| | : | |

## DISSENTING STATEMENT

**JUSTICE WECHT**                                      **FILED:  August 22, 2017**

Today, this Court denies the emergency application for relief filed by DUA Diamonds, Inc., ("DUA") and Jasmeen Kaur (collectively, "Applicant").  I respectfully dissent.  For the reasons set forth below, I would grant the application and reinstate the trial court's order lifting the automatic *supersedeas*.

In this case, police officers executed a search warrant on Applicant's jewelry stores.  The warrant specified that only the jewelry that was "identifiable" as being the subject of ongoing burglary investigations was to be seized.  *See* Trial Ct. Op., 8/4/2017, at 2.  The Commonwealth's own evidence later demonstrated that only approximately 2% of the jewelry that was seized was connected to any crime.  *Id.* at 2 (noting that, of approximately 50,000 items seized, "only 1,000 pieces were 'identifiable' as part of a crime"), 16 ("48,093 pieces [were] not identified as being part of a crime").  Nonetheless, police officers seized Applicant's entire inventory.  *Id.* at 1-2.  The origin of some of the inventory could not be ascertained, but the trial court specifically credited testimonial and documentary evidence demonstrating that "95% of the inventory

confiscated by the Commonwealth [was] bought from wholesalers and, therefore, was legitimate and not proceeds of a crime." *Id.* at 9-10. The trial court's finding notwithstanding, the Commonwealth has retained Applicant's property, and has continued to operate a website upon which it advertised and posted photographs of all of Applicant's inventory, inviting members of the public to claim any items that belong to them.[1] *Id.* at 12.

Applicant filed a petition for the return of property. The trial court granted Applicant's petition, and ordered the Commonwealth to return the pieces of jewelry that were unconnected to any crime, while allowing the Commonwealth to retain the pieces that served as evidence of a criminal enterprise. To minimize any possibility that Applicant irretrievably would dissipate jewelry later determined to be connected to the crimes under investigation, the trial court ordered Applicant to photograph every item subsequently sold, to keep receipts with those photographs, and to record the sale price, method of payment, and every buyer's name, address, and telephone number.

The Commonwealth appealed the trial court's order granting Applicant's petition in part, thereby effecting an automatic *supersedeas* and staying the trial court's order pending the resolution of its appeal. *See* Pa.R.A.P. 1736. The trial court granted Applicant's motion to lift the stay. The Comonwealth sought emergency relief in the Superior Court. The Superior Court reinstated the *supersedeas* through a *per curiam* order, providing no explanation for its rejection of the trial court's reasoning. The Superior Court's determination on the merits is pending. Although that court has directed expedited consideration, Applicant remains unable to access the inventory that

---

[1]      http://montcopa.org/JewelryWebsite (last visited August 18, 2017).

the trial court determined to be legitimate and wholly unconnected to any crime. Consequently, Applicant is unable to conduct any lawful business operations.

In my view, the Superior Court's order reinstating the *supersedeas* and preventing Applicant's recovery of its lawfully-owned property reflects an "egregious error" that warrants the exercise of this Court's supervisory powers. *See* Pa.R.A.P. 3315, Note (providing for this Court's review of stay orders of appellate courts). The trial court aptly determined that Applicant has made a sufficient demonstration that: (1) it is likely to prevail on the merits, (2) it will suffer irreparable injury if the requested relief is not granted, (3) lifting the *supersedeas* will not substantially harm the Commonwealth or other interested parties, and (4) lifting the *supersedeas* will not adversely affect the public interest. *See Pa. Pub. Util. Comm'n v. Process Gas Consumers Grp.*, 467 A.2d 805, 808-09 (Pa. 1983) (identifying the criteria for grant of a stay, and considering them in context of a motion to vacate an order granting a stay). I would exercise this Court's extraordinary jurisdiction, which is necessary here to "cause right and justice to be done." 42 Pa.C.S. § 726.

Applicant notes that, having already prevailed on the merits before the trial court with regard to the thousands of items that the trial court determined to have been obtained legitimately, it has made a sufficient showing that it was "entitled to lawful possession thereof," so as to establish grounds for the return of its property under Pa.R.Crim.P. 588.[2] Applicant observes that, once it preliminarily established its

---

[2] Rule 588 of the Pennsylvania Rules of Criminal Procedure provides, in relevant part:

> (A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. . . .

> (B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the

(continued…)

entitlement to the lawfully-owned property, the burden fell upon the Commonwealth to demonstrate that the property was derivative contraband, necessitating proof of a specific nexus between the property and the crimes alleged. *See* Emergency Application at 19-20 (citing, *inter alia*, *Barron v. Commonwealth*, 74 A.3d 250, 255 (Pa. Super. 2013), and *Petition of Koenig*, 663 A.2d 725, 726 (Pa. Super. 1995)).

Applicant notes that the Commonwealth had months to acquire evidence sufficient to satisfy its burden, and that the trial court granted the Commonwealth numerous extensions of time to produce such evidence. Despite the time afforded to the Commonwealth, and despite the Commonwealth's invitation to the public to claim Applicant's inventory as stolen property, "the Commonwealth did not provide *any* direct or circumstantial evidence that the property which [Applicant] wanted returned was, in fact, derivative contraband." Trial Ct. Op. at 12 (emphasis in original). Applicant highlights the Commonwealth's concession that some percentage of the property seized was not evidence of a crime, and that the Commonwealth, therefore, had no entitlement to it. *See* Emergency Application at 12-13 (quoting Notes of Testimony, 5/26/2017, at 161) (statement of the Commonwealth that "we have never [—] not once [—] walked into this courtroom and said every single item in there [i]s stolen. God knows that some of this is not stolen . . . .").

Importantly, the trial court only ordered the return of the inventory for which no nexus of a crime had been established, allowing the Commonwealth to retain the pieces of jewelry that would serve as actual evidence of a crime. There is no legal theory that

---

(…continued)
    property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

Pa.R.Crim.P. 588(A)-(B).

would allow the Commonwealth to retain indefinitely property that is lawfully owned and unconnected to any crime. The delineation between the property that was possessed unlawfully and the property that was obtained legitimately was based upon the trial court's factual findings and credibility determinations, which are owed substantial deference on appeal. For these reasons alone, Applicant has demonstrated a substantial likelihood of success on the merits.[3]

Applicant has established that it will suffer irreparable injury if it cannot reacquire its lawfully-owned inventory. The trial court noted that, subsequent to the seizure of Applicant's inventory, Citizens Bank has sought to collect a $100,000.00 loan that was secured by the inventory. Trial Ct. Op. at 14.[4] Applicant cannot repay the loan due to the seizure, and has borrowed money from more than nine friends and relatives in an attempt to prevent Citizens Bank from seeking to acquire from the Commonwealth the jewelry serving as collateral and then proceeding to liquidate it for less than its fair market value. *Id.* at 15. Apart from Applicant's difficulties with the loan, Applicant is

---

[3] The Commonwealth also appealed the trial court's denial of its motion to transfer venue of Applicant's petition for return of property. The venue issue is pending before the Superior Court. Applicant does not address the venue issue in the instant application for emergency relief. Arguably, this omission could serve as a basis to conclude that Applicant has not established a "likelihood of success on the merits." But I would not deny the Emergency Application upon these grounds. First, the Commonwealth's argument makes no mention of its challenge to the trial court's venue ruling, and the Commonwealth does not suggest it as a basis for this Court to deny relief to Applicant. More importantly, the venue issue is wholly independent from the merits of the issue upon which Applicant sought relief. Nowhere is it suggested that the ruling upon the substantive issue would have been different had the same evidence been presented to a trial court in Montgomery County instead of Philadelphia County.

[4] Again highlighting the legitimacy of much of Applicant's inventory, the trial court noted that the jewelry that served as collateral for the Citizens Bank loan was purchased lawfully from jewelry wholesalers, and that Applicant produced "documentation showing purchases of their inventory from Alpha Gem Corp., Mehdioff Diamond Dealers Trading Company, Diamond Castle, Inc., New York Diamond Exchange, Inc., and many others too numerous to list." Trial Ct. Op. at 10-11.

without inventory and cannot conduct business operations. The trial court credited evidence showing that the owners of DUA were three months behind in paying their home mortgage, and that foreclosure proceedings were imminent. *Id.* The trial court credited evidence that Applicant has lost existing customers and prospective new customers because its stores are closed and empty, causing Applicant's business "immeasurable harm." *Id.* The trial court credited evidence that Applicant is many months behind on paying its rent for the commercial leases for all of its storefronts, and that "eviction will be certain." *Id.* The trial court credited evidence that the owners of DUA have three children and now cannot afford to purchase groceries for their family. *Id.* at 16.

The trial court noted that Applicant likely would not be able to recoup any economic losses from the Commonwealth because, if Applicant later seeks to bring an action for damages, "it would likely be blocked by immunity provisions applicable to governmental entities." *Id.* at 17. This appears to be correct. But let us assume for the sake of argument that Applicant later could somehow recover damages from the Commonwealth. The harm to Applicant still could not be undone. By that time, it likely would be out of business permanently. Its owners may have faced foreclosure and lost their family home. Financial and reputational ruin of this sort is not easily remedied by a potential award of damages that might or might not arrive years in the future. And that is assuming, merely *arguendo*, Applicant's best-case scenario of being able to pursue such a claim at some later date, as opposed to the more likely eventuality that the Commonwealth's immunity would operate to deny Applicant any recourse whatsoever, as the trial court postulated. As such, Applicant has established that it faces immediate, irreparable harm if it cannot reacquire its lawfully-owned inventory and return to conducting its business operations.

In addition to the clear financial harm resulting from the Commonwealth's retention of Applicant's inventory, the trial court noted that Applicant is being injured by the Commonwealth's website, inasmuch as "the Commonwealth is distributing [Applicant's] inventory to the public, some of whom are not the rightful owners." *Id.* The trial court "heard evidence directly from the Montgomery County District Attorney's Office" that nine people had claimed jewelry from the website, only later to return it, stating that they were not the rightful owners of the items. *Id.* Perhaps somewhat ironically, given that Applicant is alleged to have distributed property of which it was not the rightful owner, Applicant's "inventory is being distributed to other than their rightful owners, which is obviously harming" Applicant. *Id.*

With regard to potential harm to the Commonwealth's ability to prosecute the crimes alleged, Applicant notes that the only property sought to be returned is the property determined to be unrelated to criminal activity. It remains undisputed that the Commonwealth may retain possession of the jewelry determined to be "evidence" of the alleged offenses. Applicant notes that the lawfully-obtained inventory "is not 'evidence,' and very likely never will be." Emergency Application at 27. The trial court noted that Applicant "is not seeking return of any items/jewelry [that] the Commonwealth is using to prosecute" the participants in the alleged burglary ring. Trial Ct. Op. at 18. Regardless, in an abundance of caution, the trial court imposed the above-referenced conditions upon Applicant, in order to protect against the irretrievable loss of inventory in the event that some items later might be determined to be connected to the offenses at issue. The trial court further noted that, in setting up its website, the Commonwealth already has photographed and catalogued every piece of jewelry seized. "Therefore, prophylactically, the Commonwealth already has what [it] need[s] regarding photographs and catalogued information to be able to continue to pursue [Applicant]

should anyone else ever come forward to make additional claims." *Id.* Under the circumstances, the Commonwealth will suffer no material prejudice by returning Applicant's lawfully-obtained inventory during the pendency of its appeal.

Applicant argues that the public interest favors returning Applicant's lawfully-owned property and discouraging the "abuse and overreach" in which the Commonwealth has engaged. Emergency Application at 30. Reiterating the lack of harm to the Commonwealth, Applicant again asserts that, under the circumstances of the instant case, the "public interest in protecting criminal prosecutions simply will not be compromised by the return of the inventory." *Id.* The trial court agreed with Applicant that the Commonwealth relied upon an impermissible expansion of the parameters of the search warrant, and that seizing and retaining all of Applicant's inventory, rather than the just the items for which probable cause was established, "offends the basic notions of due process at the heart of our jurisprudence." Trial Ct. Op. at 14. I agree wholeheartedly (or whole-mindedly) with the trial court's observation.

In essence, the police officers treated the search warrant as a general warrant. So armed, they deemed themselves authorized simply to seize all items possibly connected to a crime, regardless of whether probable cause existed for any individual item or whether the warrant specified the items to be seized with the requisite degree of particularity.

Our search and seizure jurisprudence does not countenance such a haphazard, scattershot approach. Our Constitutions do not allow for items to be seized first and probable cause to be established second. Little difference may be found between the execution of the search warrant in the instant case and the operation of the infamous "writs of assistance" in Colonial America, the abuses of which helped inspire the

Framers to draft the Fourth Amendment and to include within it an essential and explicit particularity requirement.[5]  This is a basic, bedrock principle of our law.

The proprietor of Applicant's businesses, Wasim Shazad, may very well be proven guilty of any number of criminal offenses.  Let us assume for the moment that he is convicted.  It has nonetheless remained undisputed by the parties throughout these proceedings that some substantial percentage of Applicant's inventory is part of Applicant's completely legitimate business operations.  In its role as finder of fact, the trial court assessed the evidence, rendered its credibility determinations, and quantified the property that is not connected to a crime and is of no use to the Commonwealth's prosecutorial efforts.  No public interest is served in allowing the Commonwealth to retain private property to which it has no entitlement.  Applicant persuasively avers that "it is in the public's interest to prevent overzealous government agents from making such a sweeping seizure and retaining private property indefinitely without any legal basis."  Emergency Application at 30.

The Commonwealth certainly is entitled to its appeal in the Superior Court.  However, the same appellate process that is designed to facilitate the dispensing of justice is here operating to deny it.  The automatic *supersedeas* mechanism that attends the Commonwealth's appeal is causing irreparable harm to a business and to the adults

---

[5]     *See Payton v. New York*, 445 U.S. 573, 608 (1980) ("[I]t was the abusive use of the warrant power . . . that precipitated the Fourth Amendment.  That Amendment grew out of colonial opposition to the infamous general warrants known as writs of assistance, which empowered customs officers to search at will, and to break open receptacles or packages, wherever they suspected uncustomed goods to be."); *Stanford v. Texas*, 379 U.S. 476, 485 (1965) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)) ("The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.").

and children who rely upon that business. The Commonwealth already has taken steps to minimize any harm that may arise from lifting the *supersedeas*, and the trial court tailored its order to further mitigate any potential prejudice to the ongoing criminal proceedings. Because Applicant has established its likelihood of success on the merits, the severe and irreparable harm that it faces, the lack of harm to the Commonwealth, and the public interests that its requested relief would serve, I would grant Applicant's Emergency Application and would reinstate the trial court's order lifting the automatic *supersedeas*. The Superior Court's error in dismissing the above-discussed considerations requires intervention in our extraordinary jurisdiction to "cause right and justice to be done." 42 Pa.C.S. § 726.

I respectfully dissent.

Justice Donohue joins the dissenting statement.